IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 12, 2002 Session

## STATE OF TENNESSEE v. JAMES NOBLE PAGE

**Direct Appeal from the Criminal Court for Montgomery County**
**No. 40000192      John H. Gasaway, III, Judge**

_____

**No. M2001-01853-CCA-R3-CD - Filed April 16, 2002**

_____

The juvenile defendant, fifteen-year-old James Noble Page, was tried as an adult for second degree murder and convicted as charged by a Montgomery County jury. The specific issue in this appeal is whether the trial court erred in instructing the jury on the "knowing" *mens rea* element of second degree murder.[1] The trial court instructed the jury that the "knowing" element of second degree murder could be established by defendant's awareness "(1) that his conduct is of a particular nature; or (2) that a particular circumstance exists; or (3) that the conduct was reasonably certain to cause the result." (Emphasis added). The state concedes the instruction was error but contends it was harmless. We conclude second degree murder is a result-of-conduct offense; allowing the jury to convict based upon awareness of the nature of the conduct or circumstances surrounding the conduct erroneously lessens the state's burden of proof for this offense; the error in the jury charge was not harmless under the facts of this case; and the conviction must be reversed and the case remanded for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Remanded for New Trial**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Michael J. Love, Clarksville, Tennessee (at trial and on appeal), and David L. Raybin, Nashville, Tennessee (on appeal), for the appellant, James Noble Page.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and James B. Crenshaw, Assistant District Attorney General, for the appellee, State of Tennessee.

_____

[1]Defendant has assigned twelve issues for our review; however, all issues relate to the trial court's definitions of the *mens rea* requirements for homicides. Accordingly, we combine all issues into a single issue for purposes of this appeal.

## OPINION

On November 13, 1999, the fifteen-year-old defendant struck the eighteen-year-old victim in the head with a baseball bat after a verbal confrontation; the victim died as a result of this injury. The defendant was transferred from Juvenile Court to the Criminal Court of Montgomery County to be tried as an adult and was indicted for second degree murder. After a jury trial, the defendant was convicted as charged and sentenced to fifteen years in the Department of Correction. This appeal followed.

## FACTS

Sufficiency of the evidence is not an issue in this appeal. Nevertheless, it is necessary that we set forth certain trial evidence in order to place the challenged jury instruction in proper perspective.

On the evening of Saturday, November 13, 1999, the fifteen-year-old defendant and his teenage friends, Brian Rader, David Smith, Kris Perrone, Manuel Pritzl, and Dennis Pritzl, met at the Pritzls' home in Clarksville. Rader testified the defendant was upset and "grumpy" when he arrived. Rader stated the defendant told him he had argued with his mother and said he "felt like getting into a fight."

An adult purchased eighteen cans of beer for the boys with the defendant's money. The defendant drank several beers before the group left in Rader's truck to go to the bowling alley. Dennis Pritzl testified the defendant told him he drank seven beers. Both Dennis and Manuel Pritzl said the defendant had slurred speech.

The defendant was riding in the front passenger seat of the truck when it passed the eighteen-year-old victim, Chris Jones, who was walking with Pamela Hicks and her son, Tommy Hicks. The victim was holding hands with Pamela Hicks, his girlfriend, and the victim was carrying a knife inside his jacket.

As the truck passed, the defendant yelled at the victim and his companions. Rader, who was driving the truck, testified the defendant yelled, "Ooh! You're ugly!" Dennis Pritzl and Kris Perrone testified the defendant yelled, "Hey!" The victim then raised his middle finger to the truck in an obscene gesture. At the defendant's request, Rader turned the truck around and drove past the victim again. As they passed the victim, the defendant extended a baseball bat out of the window, nearly hitting the victim.

Rader stopped the truck. The boys exited the parked truck and yelled at the victim and his friends as they walked past. Tommy Hicks testified one of them asked the victim why he dropped out of school. Other witnesses stated the defendant yelled, "Why did you flip us off?" The victim

and his friends did not respond, but the victim displayed a knife. The Pritzls stated the victim was "flipping" or "twirling" the knife in his hand. Dennis Pritzl said he saw the knife disappear as the victim walked past them. The victim and his companions continued walking.

The defendant returned to the truck and got the baseball bat. Holding the bat, he crossed the street and followed the victim, who continued walking away with his companions. The defendant returned to the truck where he resumed his place in the passenger seat, holding the bat between his legs. Rader stated the defendant asked him to turn around again because the defendant wanted to hit the victim with the bat. Rader turned the truck around, and again they passed the three on the side of the road. When the truck pulled into a driveway, the defendant exited the truck, still holding the bat.

The defendant followed the victim, Pamela Hicks, and Tommy Hicks, as they walked across a field toward Golf Club Lane. Smith testified the defendant was holding the bat down at his side. Rader and Manuel Pritzl testified the defendant was taunting the victim as he walked behind him by asking, "Are you going to stab me?"

Pamela Hicks testified the victim was holding her right hand with his left hand, and his other hand was in his pants pocket. She and Tommy Hicks testified they were not holding a knife as they walked across the field, nor was the victim. Witnesses testified the victim and his companions never turned around to face the defendant, but instead continued walking with their backs to him. Manuel Pritzl testified he heard the victim tell the defendant, "You better leave me alone if you know what is good for you." David Smith and Dennis Pritzl stated they never saw the three behave aggressively toward the defendant or threaten him.

Pamela Hicks said the defendant approached the victim from behind and struck him over the head with the baseball bat. Witnesses testified they heard a loud sound as the bat struck the victim's head. Pamela Hicks stated she felt the victim's hand flex and drop her hand. She and Tommy Hicks said the victim took four or five steps before falling into the street. David Spears, who stopped to assist the injured victim, found a knife in the left breast pocket of the victim's jacket.

Immediately after the defendant struck the victim, he ran to the truck, threw the bat into the bed, and jumped in, yelling "Go!Go!Go!" just before the truck sped away. The group of boys returned to the Pritzl residence where the defendant used the bat to re-enact how he struck the victim. Dennis Pritzl testified the defendant said he thought the victim was going to turn and stab him, but the defendant's statement was inconsistent with his own observations during the incident. Manuel Pritzl testified the defendant did not think he had hit the victim hard.

The following Monday, the defendant and his friends were surprised to learn the victim had died. Dennis Pritzl stated the defendant said he was scared and did not know he hit the victim that hard. Manuel Pritzl testified the defendant said, "I'm getting sick," after learning of the victim's death. Dennis Pritzl, Manuel Pritzl, and Kris Perrone stated there was an agreement to say none of

them was involved in the incident. The defendant was present for a short time while Manuel Pritzl burned the baseball bat.

Medical examiner Dr. Bruce Levy testified the victim had a large laceration on the back of his head, a skull fracture, and brain injury, all of which were caused by the same blow. Dr. Levy opined a full swing would have been necessary to cause the skull fracture, and the blow came from behind the victim. These injuries led to the victim's death.

The defendant testified that on the day of the victim's death, he had argued with his mother and was having problems at school. That evening, he went to the Pritzl residence and met his friends. He stated he drank eleven beers over a period of one and one-half hours and had not eaten a meal that day. According to the defendant, he was drunk when the group left in Brian Rader's truck to go to the bowling alley.

He testified he yelled "Hey!" out the window as the truck passed the three people walking on the side of the road because he thought he heard someone yell from the back of the truck. The defendant testified he asked the three people why they made the obscene gesture, but they did not respond. He stated he saw the victim "flipping" a knife. The defendant said he asked Rader for a baseball bat, and Rader handed one to him. He admitted he stuck the bat out of the window as they passed the victim, and he told Rader to turn the truck around.

The defendant testified he exited the truck and followed about ten feet behind the victim and his companions without saying anything. He said he carried the bat to "even the score" because the victim had a knife. The defendant said he asked the victim if he was going to stab him, and the victim replied, "Leave me alone before you get hurt."

According to the defendant, the victim and his companions slowed their pace as they approached Golf Club Lane after walking through the field, which allowed him to get within three feet of them. He said the victim had a knife clinched in his hand. The defendant stated he became scared when the victim started to turn toward him. The defendant testified he sped up to get closer to the victim before he swung the bat. He also said he did not intend to hit the victim in the head and did not know where he had struck him.

The defendant said he did not believe there was going to be a confrontation between him and the victim. He testified he had been intimidated after seeing the victim's knife and wanted to intimate the victim in return and "back him down." He testified he could not believe the victim had died.

Forensic psychiatrist Dr. Keith Caruso testified for the defense that, due to defendant's intoxication, the defendant lacked the substantial capacity to form the necessary mental state to knowingly kill the victim. Dr. Caruso stated the defendant's intent was to intimidate the victim rather than to attack him. The psychiatrist acknowledged the defendant knew he had a bat in his

hand and knew he was swinging it at the victim. He opined the defendant did not intend to kill or hurt the victim, but did intend to strike the victim.

## FINAL ARGUMENT

In final argument defense counsel conceded it was undisputed that the defendant hit the victim with the bat, thereby causing his death. Counsel further conceded the evidence did not justify self-defense. Instead, counsel argued the defendant was intoxicated, "didn't appreciate his conduct," had "no understanding of how wrong it was . . . how severe it was at that time," and did not think he hit the victim "that hard." Counsel suggested the defendant committed criminally negligent homicide.

The state answered in its rebuttal argument that the defendant acted "knowingly" as that term would be defined in the instructions to be given by the trial court. Specifically, the state argued "knowingly" included "[acting] with an awareness that his conduct is of a particular nature." The state further argued "knowingly" could also be proven by showing "a person acts with an awareness that a particular circumstance exists, or that the conduct was reasonably certain to cause the result." The essence of the state's argument was that the defendant acted knowingly since he was aware of his acts and surrounding circumstances.

## JURY CHARGE

The trial court charged the indicted offense of second degree murder and the lesser-included offenses of voluntary manslaughter, reckless homicide and criminally negligent homicide. The jury charge on second degree murder mirrored the state's argument as to its "knowing" *mens rea* requirement and was as follows:

> Any person who commits second degree murder is guilty of a crime.
>
> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) that the defendant unlawfully killed the alleged victim; and
> (2) that the defendant acted knowingly.
>
> A person acts "knowingly" if that person acts with an awareness:
>
> (1) that his conduct is of a particular nature; or
> (2) that a particular circumstance exists; or
> (3) that the conduct was reasonably certain to cause the result.

The requirement of "knowingly" is also established if it is shown that the defendant acted intentionally.

A person acts "intentionally" when that person acts with a conscious objective or desire either:

(1) to cause a particular result; <u>or</u>
(2) to engage in particular conduct.

(Emphasis added).

In defining "intentionally or knowingly" as an element of voluntary manslaughter, the instructions referred to the previously-given definitions of those terms. The charge on the "reckless" element of reckless homicide referred to the unjustifiable risk either: "(1) that a particular result will occur; <u>or</u> (2) that a particular circumstance exists." (Emphasis added). The charge on the "criminal negligence" *mens rea* of criminally negligent homicide referred to "the circumstances surrounding that person's conduct <u>or</u> the result of that conduct. . . ." (Emphasis added).

As stated, the jury convicted the defendant of second degree murder.

**ANALYSIS**

The defendant contends the trial court's jury instruction defining the "knowing" *mens rea* element of second degree murder was erroneous. He argues (1) the definition was in the disjunctive and authorized a conviction based only upon an awareness of the nature of the conduct or that a particular circumstance exists; (2) the instruction did not require a finding that the defendant must be aware that his conduct was reasonably certain to cause death; (3) the instruction erroneously lessened the state's burden of proof; and (4) the error was not harmless. The state concedes on appeal that the jury instruction was erroneous; however, it contends the error was harmless. We must agree with the defendant in all respects.

**A. General Discussion of *Mens Rea***

There are four culpable mental states in Tennessee: intentional, knowing, reckless and criminal negligence. Tenn. Code Ann. § 39-11-302. The culpable mental state is generally set forth in the statute defining the offense. *See, e.g.,* Tenn. Code Ann. § 39-13-210(a)(1) (specifically stating the culpable mental state of a "<u>knowing</u> killing" in the definition for second degree murder) (emphasis added)). If a culpable mental state is not specified, then intentional, knowing or reckless will generally suffice. Tenn. Code Ann. § 39-11-301(c); *see, e.g.,* Tenn. Code Ann. § 39-13-503(a)(1) (defining rape as unlawful sexual penetration of a victim with force or coercion but not specifying a mental state; thus, making intentional, knowing, or reckless applicable).

-6-

Each of these mental states is defined with reference to two or three of the following possible conduct elements: (1) nature of defendant's conduct, (2) circumstances surrounding the defendant's conduct, and (3) result of the defendant's conduct. Tenn. Code Ann. § 39-11-302. "Intentional" can refer to the nature of defendant's conduct or the result of defendant's conduct. Tenn. Code Ann. § 39-11-302(a). "Knowing" can refer to all three of the conduct elements. *Id*. at (b). "Reckless" can refer to the circumstances surrounding defendant's conduct or the result of defendant's conduct. *Id*. at (c). "Criminal negligence" can refer to the circumstances surrounding defendant's conduct or the result of defendant's conduct. *Id*. at (d).

In addition, our code contemplates that the applicable conduct element (nature of the conduct, circumstances surrounding the conduct, and result of the conduct) for a given culpable mental state (intentional, knowing, reckless and criminal negligence) also depends upon the offense. *See* Tenn. Code Ann. § 39-11-201(a)(1), (2) (requiring, in order to convict, not only proof of the culpable mental state, but also proof of "the conduct, circumstances surrounding the conduct, <u>or</u> a result of the conduct described in the <u>definition of the offense</u>") (emphasis added)). Thus, although the definition of "intentional" includes both nature of the conduct <u>or</u> result of the conduct, one may not be applicable to a given offense. *See generally*, <u>State v. Ducker</u>, 27 S.W.3d 889, 896 (Tenn. 2000).

## B. *Mens Rea* of Second Degree Murder

We first note that second degree murder can be committed by either a "knowing killing of another," Tenn. Code Ann. § 39-13-210(a)(1), or by the killing of another which results from the unlawful distribution of certain drugs, *id*. at (2). The killing relating to the distribution of drugs portion of the statute does not specify a particular culpable mental state. However, a "knowing killing" obviously requires the culpable mental state of "knowing."

We confine our analysis in this opinion to that form of second degree murder specifying the "knowing killing of another." Tenn. Code Ann. § 39-13-201(a)(1). "Knowing" is defined by statute as follows:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. §§ 39-11-106(a)(20), -302(b). However, a knowing second degree murder is strictly a "result-of-conduct" offense. *See* <u>Ducker</u>, 27 S.W.3d at 896. The result of the conduct is the only conduct element of the offense; the "nature of the conduct" that causes death is inconsequential. *Id*.

In fairness to the trial court, it was far from clear at the time of trial how the "knowing" *mens rea* for second degree murder should be defined in jury instructions.[1] The trial court's charge on the definition of "knowing" was verbatim from T.P.I. - CRIM 2.09 (5th ed. 2000). In Ducker, decided only months prior to the trial of this case, our supreme court did state that second degree murder was a "result-of-conduct" offense. 27 S.W.3d at 896. However, Ducker was not a second degree murder case; nor did Ducker discuss jury charges for result-of-conduct offenses. The actual holding in Ducker was that aggravated child abuse is a nature-of-conduct offense, rather than a result-of-conduct offense. *Id*. at 897. The first case to actually find reversible error in the failure to charge second degree murder as strictly a result-of-conduct offense was State v. Keith T. Dupree, No. W1999-01019-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 65, at *11 (Tenn. Crim. App. Jan. 30, 2001, at Jackson), *no perm to app. filed*; however, Dupree was filed several days after the trial of this case. Furthermore, the trial court in Dupree charged only nature of the conduct and circumstances surrounding the conduct; it omitted entirely the result of the conduct element.

Regardless, as the state concedes, it is now established that a knowing second degree murder is strictly a result-of-conduct offense. Ducker, 27 S.W.3d at 896. A jury instruction that allows a jury to convict on second degree murder based only upon awareness of the nature of the conduct or circumstances surrounding the conduct improperly lessens the state's burden of proof. For second degree murder, a defendant must be aware that his or her conduct is reasonably certain to cause death. *See* Tenn. Code Ann. § 39-11-302(b); Dupree, supra.

## C. Suggested Jury Instructions

A correct jury instruction for knowing second degree murder in this case would be as follows:

> Any person who commits second degree murder is guilty of a crime.

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

> (1) that the defendant unlawfully killed the alleged victim; and

> (2) that the defendant acted knowingly.

---

[1] We also note this issue was not raised during trial, but rather was raised for the first time in the motion for new trial. Nevertheless, an erroneous or inaccurate jury charge, as opposed to an incomplete jury charge, is not waived by the failure to make a contemporaneous objection; it may be raised for the first time in the motion for new trial. State v. Lynn, 924 S.W.2d 892, 899 (Tenn. 1996); State v. Eldridge, 951 S.W.2d 775, 779 (Tenn. Crim. App. 1997); Tenn. R. Crim. P. 30(b).

"Knowingly" means that a person acts with an awareness that [his] [her] conduct is reasonably certain to cause the death of the alleged victim.

The requirement of "knowingly" is also established if it is shown that the defendant acted "intentionally."

"Intentionally" means that a person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim.

In addition to knowing second degree murder, we also believe that voluntary manslaughter, reckless homicide and criminally negligent homicide are result-of-conduct offenses. Accordingly, the trial court erred by referring to the prior definitions of "knowing" and "intentional" in defining these offenses since the prior definitions included the nature of the conduct and circumstances surrounding the conduct. Although this is moot as it relates to these lesser-included offenses, we note the error for guidance upon retrial.

For further guidance to the bench and bar, we are attaching as an Appendix what we believe to be proper jury charges on premeditated first degree murder,[2] knowing second degree murder, voluntary manslaughter, reckless homicide and criminally negligent homicide.

## D. Harmless Error

We must now determine whether the erroneous jury instruction was harmless, as argued by the state. We first examine the appropriate standard of review.

### (1) Standard of Review

A defendant has the constitutional right to complete and accurate jury instructions on the law; the failure to do so deprives a defendant of the constitutional right to a jury trial. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). The omission in jury instructions of an element of the offense is subject to constitutional harmless error analysis; namely, whether the state can prove harmless error beyond a reasonable doubt. State v. Walker, 29 S.W.3d 885, 893 (Tenn. Crim. App. 1999). We conclude an erroneous jury instruction, which misstates the applicable conduct element of an offense and lessens the state's burden of proof, is likewise subject to constitutional harmless error analysis.

---

[2]Premeditated first degree murder requires not only that the killing be "intentional," but also that the defendant act with a "premeditated" mental state. Tenn. Code Ann. § 39-13-202(a)(1) (1997). "Premeditation" is defined by statute. Id. at (d). We conclude the "intentional" culpable mental state of premeditated first degree murder relates to the result of the conduct, just as the "knowing" culpable mental state of second degree murder relates to the result of the conduct. Accordingly, our suggested jury charge for premeditated first degree murder deviates from T.P.I. - CRIM 2.08 and 7.01(b) (5th ed. 2000) by deleting the reference to the nature of the defendant's conduct.

## (2) State's Argument

The state contends that defendant's reliance upon self-defense renders the error harmless beyond a reasonable doubt. Even if the defendant relied upon self-defense, we fail to see how this would necessarily be determinative of this issue. Regardless, defense counsel in final argument conceded the killing was not justified and, as to self-defense, stated, "I'm not going to pull your leg. I don't think there's enough there." Accordingly, we reject the state's contention.

## (3) Trial Issues

We recognize that in many, if not most, homicide trials, the *mens rea* jury instructions utilized in this case would be harmless error. If a victim is shot at point blank range with a twelve gauge shotgun while asleep, and the defense is the defendant was not the shooter, then the erroneous instruction would likely be harmless. In such a situation, *mens rea* is not a disputed issue at trial. Similarly, if causation is not disputed in a homicide trial, the failure to instruct the jury on causation may well be harmless. *See* State v. Farner, 66 S.W.3d 188, 206 (Tenn. 2001).

Here, the *mens rea* of the defendant was indeed the disputed issue at trial. Since the defendant conceded an unlawful and unjustified killing, the only real issue at trial was the degree of homicide committed by the defendant. The defense theory was that the defendant was intoxicated, did not intend to hit the victim in the head, and did not intend to hit the victim "that hard." The essence of the defense theory was that this was not a "knowing killing," not a second degree murder, but was a criminally negligent homicide.

The state countered in its argument by specifically and improperly relying upon the nature of the conduct and circumstances surrounding the conduct, and contended it was not required to prove the defendant's awareness that his conduct was reasonably certain to cause death. The state's argument was subsequently, and erroneously, fully justified by the jury charge.

Since the only real issue at trial was the degree of homicide committed, which in turn rested upon the *mens rea* and appropriate conduct element, we are unable to conclude the erroneous jury instruction was harmless beyond a reasonable doubt. Accordingly, we must reverse and remand for a new trial.

## CONCLUSION

This court fully realizes the complexity and practical problems for the bench and bar in ascertaining, arguing and charging the proper *mens rea* and its applicable conduct elements for criminal offenses. It further appears to this panel that comprehensive revisions of pattern jury

instructions may well be necessary.[3]  Nevertheless, we believe the Tennessee statutes, modeled in large part after the American Law Institute's Model Penal Code, must be followed and demand this result. *See* **Model Penal Code** § 2.02(2) (defining the culpable mental states with reference to nature of the conduct, circumstances surrounding the conduct, and result of the conduct).

Our criminal code is similar to the code adopted in Texas.  *See* Tex. Penal Code §§ 6.02, -.03 (2002) (containing *mens rea* and conduct elements similar to those in Tennessee).  Texas has confronted similar problems regarding jury instructions on nature of the conduct, circumstances surrounding the conduct, and result of the conduct.  *See* Cook v. State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994) (finding error in jury charge on murder and voluntary manslaughter, both of which are result-of-conduct offenses, which did not limit "intentionally and knowingly" to result only language and remanding to Court of Appeals for harmless error analysis);  Barcenes v. State, 940 S.W.2d 739, 743-44 (Tex. App. 1997) (holding defendant charged with murder, a result-of-conduct offense, is entitled to have definitions of "intentionally and knowingly" limited to result only language, but finding the error harmless).  It appears we, like Texas, are unable to avoid the issue.

We reverse and remand for a new trial.

_____
JOE G. RILEY, JUDGE

---

[3]We recognize that jury instructions on offenses other than homicides may need revisions.  We caution the bench and bar that this opinion and suggested jury instructions only address certain homicide offenses.

## APPENDIX

## SUGGESTED JURY CHARGES

### FIRST DEGREE MURDER (PREMEDITATED KILLING)
### (FOR OFFENSES COMMITTED ON OR AFTER JULY 1, 1995)

Any person who commits the offense of first degree murder is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1)  that the defendant unlawfully killed the alleged victim; and

(2)  that the defendant acted intentionally.  A person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim; [A defendant's  conscious objective need not be to kill a specific victim.  If you find beyond a reasonable doubt that the defendant intended to cause the death of a person, and that the defendant did so with premeditation, then the killing of another, even if not the intended victim, would be first degree murder;] and

(3)  that the killing was premeditated.

A premeditated act is one done after the exercise of reflection and judgment.  Premeditation means that the intent to kill must have been formed prior to the act itself.  It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time.  The mental state of the accused at the time [he] [she] allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.  If the design to kill was formed with premeditation, it is immaterial that the accused may have been in a state of passion or excitement when the design was carried into effect.  Furthermore, premeditation can be found if the decision to kill is first formed during the heat of passion, but the accused commits the act after the passion has subsided.

If you find from the proof beyond a reasonable doubt that the defendant is guilty of murder in the first degree, you will so report and your verdict in that event shall be "We, the Jury, find the defendant guilty of murder in the first degree".

[If you so find, then it shall be your duty after a separate sentencing hearing to determine whether the defendant will be sentenced to death, life imprisonment without the possibility of parole, or life in prison, but you will not consider punishment for this offense at this time.]

## SECOND DEGREE MURDER

## (KNOWING KILLING OF ANOTHER)

Any person who commits second degree murder is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant unlawfully killed the alleged victim; and

(2) that the defendant acted knowingly.

"Knowingly" means that a person acts with an awareness that [his] [her] conduct is reasonably certain to cause the death of the alleged victim.

The requirement of "knowingly" is also established if it is shown that the defendant acted "intentionally."

"Intentionally" means that a person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim.

## VOLUNTARY MANSLAUGHTER

Any person who commits voluntary manslaughter is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following elements:

(1) that the defendant unlawfully killed the alleged victim; and

(2) that the defendant acted intentionally or knowingly; and

(3) that the killing resulted from a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.

The distinction between voluntary manslaughter and second degree murder is that voluntary manslaughter requires that the killing result from a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.

"Intentionally" means that a person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim.

"Knowingly" means that a person acts with an awareness that [his] [her] conduct is reasonably certain to cause the death of the alleged victim.

## RECKLESS HOMICIDE

Any person who commits the offense of reckless homicide is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant killed the alleged victim; and

(2) that the defendant acted recklessly.

"Recklessly" means that a person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk that the alleged victim will be killed. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

The requirement of "recklessly" is also established if it is shown that the defendant acted intentionally or knowingly.

"Intentionally" means that a person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim.

"Knowingly" means that a person acts with an awareness that [his] [her] conduct is reasonably certain to cause the death of the alleged victim.

-14-

# CRIMINALLY NEGLIGENT HOMICIDE

Any person who commits criminally negligent homicide is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

> (1)  that the defendant's conduct resulted in the death of the alleged victim; and

> (2)  that the defendant acted with criminal negligence.

"Criminal negligence" means that a person acts with criminal negligence when the person ought to be aware of a substantial and unjustifiable risk that the alleged victim will be killed.  The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

The requirement of criminal negligence is also established if it is shown that the defendant acted intentionally, knowingly or recklessly.

"Intentionally" means that a person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim.

"Knowingly" means that a person acts with an awareness that [his] [her] conduct is reasonably certain to cause the death of the alleged victim.

"Recklessly" means that a person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk that the alleged victim will be killed.  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.