# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 22, 2003

## STATE OF TENNESSEE v. HERSHEL DAVID STANDRIDGE

**Direct Appeal from the Criminal Court for White County**
**No. CR680     Leon Burns, Jr., Judge**

---

**No. M2002-01699-CCA-R3-CD - Filed September 30, 2003**

---

A jury in the White County Criminal Court found the appellant, Hershel David Standridge, guilty of theft of property valued under $500 and resisting arrest. The trial court imposed a total effective sentence of eleven months and twenty-nine days incarceration in the White County Jail but suspended service of the sentence and immediately placed the appellant on probation. Later, subsequent to his timely filing a notice of appeal, the appellant's probation was revoked. On appeal, the appellant raises issues concerning the sufficiency of the evidence, sentencing, and the jury instructions. Upon review of the record and the parties' briefs, we affirm in part and reverse in part the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed in Part and Reversed in Part.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

David Brady and John B. Nisbet, III, Cookeville, Tennessee (on appeal); and Joe L. Finley, Jr., Cookeville, Tennessee (on appeal and at trial), for the appellant, Hershel David Standridge.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William Edward Gibson, District Attorney General; and John A. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual Background

The appellant was indicted by the White County Grand Jury on charges of theft of property valued under $500 and resisting arrest. A trial on those charges was held on September 17, 2001. At trial, Sandra Sparkman, an employee in the lawn and garden department of the Wal-Mart store

in Sparta, testified that she saw the appellant at Wal-Mart on May 1, 2000. Sparkman stated that at 4:30 p.m. or 5:00 p.m., she noticed the appellant load merchandise on his truck. She knew the appellant had not purchased the merchandise from her department. Sparkman inquired about the merchandise, whereupon the appellant said, "Let's unload it. I'll go pay for it and we'll load it back up." Among the items unloaded were two tables, ten chairs, and three umbrellas. After the merchandise was unloaded, the appellant "took off."

After the appellant left, Sparkman watched the parking lot from the "corral" outside the store when she was not at her register. During the ensuing two hours, she observed the appellant leave the shopping center and return four times, each time approaching closer to Wal-Mart. On the final occasion, Sparkman noticed the handle of a lawn mower and some potted plants in the back of the appellant's truck. Sparkman knew that the appellant had not purchased any items at her register in the lawn and garden department. Sparkman explained that at the time of the offense, customers were required to purchase lawn mowers in the lawn and garden department because certain paperwork had to be completed. Accordingly, Sparkman contacted management who in turn contacted the police.

Officer Roy Gooch of the Sparta Police Department responded to the call from Wal-Mart. Officer Gooch apprehended the appellant and returned the lawn mower to Wal-Mart. Sparkman and Brad Pendleton, the store's assistant manager, identified the lawn mower as belonging to Wal-Mart. Specifically, Sparkman stated that the lawn mower had the same bar code as other mowers at the Sparta Wal-Mart. However, she did not know if other Wal-Mart stores utilized the same bar codes. Sparkman also explained that Murray push mowers were the only mowers with handles sold by Wal-Mart. These lawn mowers were kept in front of the store and the mower recovered from the appellant was identical to the Murray push mowers sold by Wal-Mart. Moreover, Sparkman noted that the inventory reflected that two lawn mowers were missing from the Sparta Wal-Mart.

Sparkman did not recall seeing a lawn mower on the truck when the appellant unloaded the items from his truck following their first confrontation. Sparkman admitted that the lawn mower could have been on the truck at that time, but she maintained that she did not see it. Additionally, Sparkman conceded that she did not see the appellant load the lawn mower. She explained that she was not constantly watching the parking lot, and she would have had to step off of the sidewalk in front of the store to see the appellant load the lawn mower.

Officer Gooch testified that on May 1, 2000, he was called to the Wal-Mart store in Sparta regarding a theft. Upon arrival, Officer Gooch spoke with Pendleton. Pendleton identified the appellant, who was driving around the shopping center, as the offender. Officer Gooch, driving his marked cruiser and wearing his uniform, parked beside the appellant's vehicle. When he approached the appellant to discuss the accusation, Officer Gooch smelled alcohol on the appellant's breath and inside his truck. He also noticed a quart of beer with a broken seal in the floor of the appellant's truck.

Officer Gooch questioned the appellant about the items in the back of his truck. The appellant maintained that he had purchased the lawn mower earlier that day at a Wal-Mart store in

Cookeville, but he could not find the receipt. The officer noted that the appellant "was real nervous acting" and that he kept reaching around his seat despite the officer's warnings to keep his hands in plain sight. Because of the appellant's repeated failure to comply with his instructions, Officer Gooch instructed the appellant to get out of the truck. The appellant refused.

Officer Gooch then opened the door of the appellant's truck, grabbed the appellant's wrist, and pulled him from the vehicle. The appellant began struggling. Officer Gooch told the appellant that he was under arrest and pushed him against the truck, handcuffing his left wrist. The appellant broke free and ran toward the cruiser. Officer Gooch caught the appellant and pushed him against the cruiser. Officer Gooch remarked that "[a]t that point he turned around and he had his hand on my holster. My gun was unsnapped." Because the appellant was twisting and squirming, Officer Gooch placed the appellant in a "pain compliance hold" or "choke hold." Three nearby firefighters assisted Officer Gooch in restraining the appellant. During the altercation, the appellant repeatedly stated, "I'm not being violent."

Officer Gooch noted that the back of the appellant's truck contained a large amount of garbage, a new Murray lawn mower, and some potted plants. Pendleton identified the lawn mower as the property of Wal-Mart, specifically indentifying the packaging and bar code on the lawn mower.

Brad Pendleton testified that he was the assistant manager of the Sparta Wal-Mart on May 1, 2000. That day, Pendleton was contacted by an associate regarding an attempted theft of merchandise. Following Officer Gooch's arrival, Pendleton identified the appellant as the perpetrator. The appellant's truck contained ten potted plants and a Murray push mower. Pendleton noted that the particular type of Murray push mower the appellant had in the back of his truck was sold exclusively by Wal-Mart. He further noted that the price of the Murray push mower was $99.96. Pendleton stated that the inventory list reflected that two mowers were missing from the Sparta Wal-Mart, and the appellant could not produce a receipt as proof of purchase for his lawn mower.

The appellant called Chad Drouillard as the sole witness for the defense. Drouillard testified that he saw the appellant in the parking lot of the Auto Zone store shortly before noon on May 1, 2000. The appellant offered Drouillard a potted tomato plant. The two men began talking, and the appellant told Drouillard that he had just bought a new lawn mower at the Wal-Mart store in Cookeville. Drouillard looked in the back of the appellant's truck and saw a "[c]hrome handle, looked to be about a 20 inch cut lawn mower, Briggs and Stratton engine. Shiny new; it was new." Drouillard did not know the brand of the lawn mower, but he was certain that the handles of the lawn mower were chrome.

In rebuttal, the State recalled Officer Gooch. The officer testified that the handles of the lawn mower recovered from the back of the appellant's truck were "flat black, painted flat black." He also noted that the "deck of the mower was shiny red" and appeared new.

Based upon the foregoing proof, the jury convicted the appellant of theft of property valued under $500 and of resisting arrest. The trial court conducted a sentencing hearing and sentenced the appellant to eleven months and twenty-nine days incarceration for the theft conviction and to five months and twenty-nine days incarceration for the resisting arrest conviction, with the sentences to be served concurrently. The trial court immediately suspended the appellant's sentences.

Shortly thereafter, a probation revocation hearing was held.[1] The proof at the revocation hearing revealed that the appellant was arrested for driving under the influence (DUI) on November 5, 2001. At the conclusion of the hearing, the trial court found that the State had proven by a preponderance of the evidence that the appellant had violated the terms of his probation. The trial court stated, "I would order that you be taken into custody to serve your sentence. Now, I'll look to that again periodically. . . . That's the plan right now. If things go well, you might get out early." However, the revocation order reflects that the appellant must serve the "balance of his sentence of 274 Consecutive Days, day for day."

On appeal, the appellant raises the following issues for our review: (1) whether the evidence presented at trial was insufficient to convict the appellant of theft and resisting arrest; (2) whether "after a notice of appeal was filed the trial court was without authority to either place [the appellant] on probation or violate [the appellant's] probation"; (3) whether "the trial court erred by requiring [the appellant's] split confinement sentence to be served 'day for day'"; and (4) whether "the trial court improperly instructed the jury concerning the definition of 'intentionally' and 'knowingly.'"[2]

## II. Analysis

### A. Sentencing

Initially, we will address the revocation of the appellant's probation. The appellant contends that after he filed his notice of appeal, the trial court was without jurisdiction to place him on probation or to revoke his probation. In State v. Lyons, 29 S.W.3d 48, 50 (Tenn. Crim. App. 1999), this court concluded "that when a defendant convicted of a misdemeanor and sentenced to probation appeals his conviction to the appellate courts of this state, his sentence is automatically stayed pending the outcome of his appeal."

In the instant case, the appellant filed a notice of appeal on November 13, 2001. A probation violation warrant was issued by the trial court on December 19, 2001, whereupon the trial court revoked the appellant's probation because the appellant had been charged with a DUI on November 5, 2001. As we have previously observed, "the jurisdiction of this Court attaches upon the filing of the notice of appeal and the trial court therefore loses jurisdiction to revoke probation during the

---

[1] The probation violation warrant was not included in the record for our review.

[2] We will address the appellant's issues in a different order than that in which they were raised in the appellant's brief.

pendency of the appeal." State v. Nelson Keith Foster, No. E2002-00323-CCA-R3-CD, 2002 WL 31318650, at *1 (Tenn. Crim. App. at Knoxville, Oct. 15, 2002). Accordingly, the appellant is correct in arguing that the trial court was without jurisdiction to revoke his probation while his appeal was pending. However, this court has also cautioned that

> [t]he hands of a trial court . . . are not tied under these circumstances. Under Tennessee Code Annotated section 40-35-311(a) and the rule in [State v. Conner, 919 S.W.2d 48 (Tenn. Crim. App. 1995)], a trial court could appropriately consider a probation revocation warrant based on a criminal offense committed during appeal after the completion of the appeal and return of jurisdiction to the trial court.

State v. Patricia Adkisson, Nos. M2000-01079-CCA-R3-CD and M2000-02319-CCA-R3-CD, 2001 WL 1218570, at *10 (Tenn. Crim. App. at Nashville, Oct. 12, 2001).

## B. Sufficiency of the Evidence

As we have noted, the appellant also challenges the sufficiency of the evidence supporting his convictions. On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

"A person commits theft of property if, with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997). In the instant case, Sparkman testified that the appellant had loaded merchandise belonging to Wal-Mart into his truck without paying for the items. After being confronted by Sparkman and unloading the items, the appellant "took off." Shortly thereafter, over the course of two hours, the appellant repeatedly returned and left the shopping center, driving closer to Wal-Mart on each occasion. See State v. Stephanie Renae Person, No. W2000-02859-CCA-R3-CD, 2001 WL 1200661, at *2 (Tenn. Crim. App. at Jackson, Oct. 10, 2001). Sparkman noticed a lawn mower in the back of the truck and knew that the appellant had not bought it at the Sparta Wal-Mart. When Officer Gooch apprehended the appellant, he was in possession of a Murray push mower of the type sold exclusively by Wal-Mart. Pendleton identified the lawn

mower as being similar to the two lawn mowers missing from the Sparta Wal-Mart. Viewing this evidence in the light most favorable to the State, we conclude that the jury could have reasonably found the appellant guilty of the theft of the mower.

Additionally, we likewise conclude that the State established the appellant's guilt of resisting arrest. Tennessee Code Annotated section 39-16-602(a) (1997) provides that

> [i]t is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

"'Force' means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title." Tenn. Code Ann. § 39-11-106(12) (1997).

Officer Gooch testified that he was in uniform and was driving a marked police cruiser. He parked the cruiser next to the appellant's vehicle and approached the appellant. After the appellant refused to keep his hands where the officer could see them, Officer Gooch informed the appellant that he was under arrest. When the appellant struggled with the officer, he was put in a "pain compliance hold." Ultimately, with the help of three firefighters, Officer Gooch was able to restrain the appellant. We conclude that a jury could have reasonably found the appellant guilty of resisting arrest.

### C. Jury Instructions

Next, the appellant contends that the trial court "improperly instructed the jury concerning the definition[s] of 'intentionally' and 'knowingly.'" Initially, we note that the appellant did not complain regarding the jury instructions at trial or in his motion for new trial, arguably waiving this issue on appeal. See Tenn. R. App. P. 3(e). Nevertheless, the appellant's complaint is without merit.

It is undisputed that a defendant has a constitutional right to have the jury completely and accurately instructed on the law, and the failure to so instruct the jury deprives the defendant of the constitutional right to a trial by jury. See State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In analyzing the jury charge, we must be mindful that "[j]ury instructions must be read as a whole rather than in isolation." State v. Belser, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996).

In State v. Page, 81 S.W.3d 781, 786 (Tenn. Crim. App. 2002), this court explained that there are four culpable mental states in Tennessee, namely intentional, knowing, reckless, and criminal negligence, and that the applicable mental state is generally provided for within the statute defining the offense. Each mental state refers to two or three possible conduct elements: "(1) nature of defendant's conduct, (2) circumstances surrounding the defendant's conduct; and (3) result of the

defendant's conduct."[3] Id. at 787. The applicable conduct element depends upon the offense. Id.

In the instant case, the trial court instructed the jury in accordance with the definitions provided in our criminal code. Tennessee Code Annotated section 39-11-302(a) (1997) provides that "'[i]ntentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Additionally, "'[k]nowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. at (b). Furthermore, "[w]hen acting knowingly suffices to establish an element, that element is also established if a person acts intentionally." Tenn. Code Ann. § 39-11-301(c) (1997). As we noted earlier, the theft statute requires a mental state of "knowingly." See Tenn. Code Ann. § 39-14-103.

The appellant, citing our recent decision in Page, *supra*, argues that the trial court erroneously instructed the jury on "all three 'conduct' types . . . in the definitions to both 'knowingly' and 'intentionally'" in relation to theft. The appellant claims that theft is "[m]ost likely" a result of conduct crime and that the trial court should have instructed the jury accordingly. However, this court has recently concluded that "theft of property is not a result of conduct offense because the conduct proscribed is not criminalized because of its result, but instead the conduct is criminal because of the circumstances surrounding the taking of the property of another." State v. Tracy F. Leonard, No. M2001-00368-CCA-R3-CD, 2002 WL 1987963, at *26 (Tenn. Crim. App. at Nashville, Aug. 28, 2002), perm. to appeal denied, (Tenn. 2002); see also State v. Marcus Webb, No. W2002-00614-CCA-R3-CD, 2003 WL 214451, at *4 (Tenn. Crim. App. at Jackson, Jan. 29, 2003), perm. to appeal denied, (Tenn. 2003). We find no reversible error in the instruction given in the instant case.

D. Sentencing

Finally, the appellant argues that the trial court, after revoking his probation, erred by requiring him to serve his sentence of "split confinement" "day for day."[4] The State concedes the court's error in ordering the sentence to be served "day for day," correctly noting that "[i]t is well established under Tennessee law that a trial court may not order a defendant to served a sentence less

___

[3] "A result-of-conduct offense requires that the culpable mental state accompany the result as opposed to the nature of the conduct. . . . Generally, an offense may be classified as a result-of-conduct offense when the result of the conduct is the only element contained in the offense." State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000).

[4] Initially, we note that the appellant is incorrect in referring to the sentence imposed as "split confinement." "Split confinement" is defined by Tennessee Code Annotated section 40-35-306(a) (1997) as a sentence of continuous confinement up to one year in the local jail or workhouse coupled with a period of probation up to and including the statutory maximum for the offense. In the instant case, the trial court granted a sentence of full probation and thereafter revoked the appellant's probation and ordered service of the entire sentence in confinement.

than one year 'day-for-day.'" As we earlier noted, upon revoking the appellant's probation, the trial court stated, "I would order that you be taken into custody to serve your sentence. Now, I'll look to that again periodically. . . . That's the plan right now. If things go well, you might get out early." However, the revocation order reflects that the appellant must serve the "balance of his sentence of 274 Consecutive Days, day for day."

Upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(d) (1997); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). In the instant case, the appellant was originally sentenced to serve eleven months and twenty-nine days incarceration for the theft conviction and five months and twenty-nine days incarceration for the resisting arrest conviction, with the sentences to be served concurrently. The judgments of conviction provide that the appellant is eligible for work release, furlough, trusty status and rehabilitative programs after serving seventy-five percent (75%) of his sentence in confinement. As guidance to the trial court, we note that should the trial court revoke the appellant's probation, the court would be authorized to impose the original sentence, not a sentence requiring the appellant to serve his sentence "day for day."

### III.  Conclusion

Accordingly, we affirm the appellant's convictions for theft and evading arrest, but reverse the trial court's revocation of the appellant's probation due to the trial court's lack of jurisdiction at the time of the revocation.

_____
NORMA McGEE OGLE, JUDGE