IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 28, 2003 Session

## ERNEST B. EADY v. STATE OF TENNESSEE

Direct Appeal from the Criminal Court for Knox County
No. 73105    Richard R. Baumgartner, Judge

No. E2002-03111-CCA-R3-PC
March 25, 2004

The petitioner, Ernest B. Eady, was convicted of second degree murder and sentenced to confinement for twenty years. His conviction and sentence were affirmed by this court and application for permission to appeal was denied by the supreme court. He filed a petition for post-conviction relief, alleging that trial counsel was ineffective for not raising as an issue on appeal that the jury had not been properly instructed as to murder second degree. Following a hearing, the post-conviction court granted the petition, and the State appealed. We reverse the order of the post-conviction court and remand for an order dismissing the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leland L. Price, Assistant District Attorney General, for the appellant, State of Tennessee.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellee, Ernest B. Eady.

**OPINION**

**FACTS**

Utilizing the opinion of this court in the direct appeal of the petitioner's conviction, we will summarize the facts which were the basis for his prosecution. On November 21, 1998, the petitioner went to Mr. C's Private Party Lodge. He arrived around 2:30 a.m. and was searched for weapons by the doorman. Around 3:30 a.m., the petitioner poured his drink onto the floor of the lodge, and the owner asked him to leave the premises. The petitioner "started" at him but was restrained by his friends. As the petitioner was escorted outside, he knocked over some tables and chairs and said,

"I am going to get you" and "I am tired of you fucking with me." The petitioner returned to the lodge around 4:45 a.m. and attempted to reenter the lodge. At that time, there were approximately thirty to forty people inside the lodge and the parking lot was filled with cars. The doorman noticed that the petitioner was carrying a 9-millimeter handgun and told him that he could not reenter the lodge. The petitioner kept looking inside the lodge and asking, "Where is he at?" Eventually, the doorman managed to close the door, keeping the petitioner out of the lodge. Within minutes shots were fired at the lodge, one killing the victim, Robert Lee Fletcher. The petitioner was identified as the person who had fired into the lodge, and his vehicle was seen leaving the parking lot just after the shooting. See State v. Ernest B. Eady, No. E2000-00722-CCA-R3-CD, 2001 WL 120725, at **1-2 (Tenn. Crim. App. Feb. 13, 2001), perm. to appeal denied (Tenn. June 18, 2001).

The petitioner was convicted of second degree murder on December 3, 1999, and a notice of appeal was filed on March 29, 2000. On July 14, 2000, which was after the filing of the petitioner's notice of appeal and before the filing of his appellate brief on September 18, 2000, our supreme court issued its opinion in State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000), which stated that second degree murder is a result-of-conduct, not a nature-of-conduct, offense. Trial counsel did not challenge, in his brief or at oral argument, the trial court's second degree murder jury instructions, which stated that second degree murder was either a result-of-conduct or a nature-of-conduct offense.

This court affirmed the petitioner's conviction on direct appeal. See Ernest B. Eady, 2001 WL 120725, at *7, and, on June 18, 2001, he was denied permission to appeal to the Tennessee Supreme Court. He filed a *pro se* petition for post-conviction relief, which was later amended by his appointed counsel, claiming that his trial counsel had been ineffective for not arguing on appeal that the trial court's instructions as to the "knowing" component of murder second degree had been deficient.

The only witness to testify at the post-conviction hearing was the petitioner's trial counsel, who had represented the petitioner at trial and on direct appeal. He had been licensed in Tennessee since 1998 and in Indiana since 1992, and his practice included a "fair percentage" of criminal defense matters, as well as family law matters, juvenile and personal injury cases, but no bankruptcy or tax matters. He and another lawyer were the only two attorneys at their firm; however, during the petitioner's appeal, the other lawyer was battling lung cancer, leaving trial counsel as the only attorney actually working in the firm.

Trial counsel stated he was familiar with the legal research tools for Tennessee and made attempts to keep up with the new Tennessee appellate decisions. He said that he read the Tennessee Attorney's Memo, the Tennessee Decisions published by West, and the West updates for the new books that were published but did not have access to an electronic or Internet research database at the time of the petitioner's appeal.

Trial counsel said he had participated in a fair number of trials, many of which proceeded to this court. He was familiar with appellate practice and had written a few briefs. Regarding the petitioner's trial, he said that one of the arguments he raised at trial was that the facts of the crime

did not fit second degree murder.  Specifically, he argued that the petitioner was elsewhere at the time of the shooting and that the identity of the shooter was in question.  He also argued, alternatively, that even if the petitioner were the shooter, the facts of the case did not support the theory that it was a knowing killing because the petitioner fired at a building with no idea where the bullet would go.  As such, he argued to the jury that the petitioner was more likely guilty of reckless or criminally negligent homicide, and the jury was charged with these two lesser-included offenses.

Trial counsel also testified that he did not recall reviewing the Ducker case when he was preparing his appellate brief, although, in that brief, he did raise the issue of whether the defendant committed a knowing killing.  Specifically, he argued on appeal that, under the facts of the case, the most serious offense of which the jury could have found the petitioner guilty was reckless or criminally negligent homicide, citing a case that discussed the awareness element for each of those offenses.  However, this court affirmed the petitioner's conviction and sentence.

At the conclusion of the hearing, the post-conviction court granted the petition for post-conviction relief and, later, set an appeal bond of $50,000.

## ANALYSIS

### I.  Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-110(f) (2003).  When an evidentiary hearing is held  in the post-conviction setting, the findings of fact made by the trial court are conclusive on appeal unless the evidence preponderates against them.  See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996).  Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence.  See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997).  However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness.  See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).  The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court.  See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To determine the competence of counsel, Tennessee courts have applied standards developed in federal case law.  See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective.  The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results."  Id., 466 U.S. at 685, 104 S. Ct. at 2063.  The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id., 466 U.S. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id., 466 U.S. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-

guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The trial court made the following oral findings and conclusions in granting the petition for post-conviction relief:

> I have concluded that while this jury . . . would have been justified in – under the facts of this case in finding that this was a result-of-conduct killing, that because they were told that it could be either result of conduct or nature of conduct and the district attorney . . . argued very forcefully to the jury that this was – he didn't have to have in his mind that it was – the result of this act was . . . nature of the conduct, and he argued it vigorously to the jury and convinced them, in my judgement, that they could find that way.
>
> And I think based on that, that while the state may still prevail on a second-degree charge, that I think that it was – that they should have been told – this jury should have been told they had to find that it was – his conduct was reasonably certain to cause the death of this individual. I think it is – I think when you shoot into an occupied building there's certainly grounds to find second-degree murder, but I think the jury should have been properly instructed on that matter.
>
> So I'm going to find – and again, I don't fault [trial counsel]. This is – this was developing law at that time, but I believe that this should have been argued to the Court of Criminal Appeals. . . .
>
> So I'm going to give you some relief, [the petitioner]. It doesn't mean you get out. The state has the right to appeal this. They certainly have the right to retry you, in any event.
>
> But I find that in my judgment this was by clear and convincing evidence a failure that resulted in the deprivation of a constitutional right to have . . . the jury be properly instructed in this case. So I'm going to grant you relief[.]

In reviewing this finding, we note first that Tennessee Code Annotated section 40-30-111(b) (2003) requires that written findings of fact and conclusions of law be filed by the post-conviction court so that there can be effective appellate review. See Tenn. Sup. Ct. R. 28 § 9(A). However, this court has held that a post-conviction court's verbal pronouncement of its findings of fact and conclusions of law from the bench, as was the case here, can be harmless error. See State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987); State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). We conclude that the post-conviction court's providing oral, rather than written, findings was harmless error.

It is not clear from the post-conviction court's oral findings, however, whether trial counsel was determined to have been ineffective. While the post-conviction court said that it did not "fault" trial counsel, the court said also that "this was . . . a failure that resulted in the deprivation of a constitutional right." Additionally, the post-conviction court stated that "the Court of Criminal Appeals should have picked up on it themselves." The post-conviction court did not explain, however, whether the "failure"occurred at the conclusion of the trial when the jury was not properly instructed as to murder second degree, or when trial counsel did not raise the issue on appeal, or when the Court of Criminal Appeals did not *sua sponte* consider the adequacy of the instructions, although not an issue on appeal. The post-conviction court's saying that it did not "fault" trial counsel precludes our interpreting the court's finding the first prong of the Strickland test had been met, namely that appellate counsel was ineffective. Accordingly, even though the post-conviction court found that a "deprivation" of the petitioner's constitutional rights had occurred, the court did not explain, by our understanding, whether trial counsel was to blame or whether the deprivation resulted simply from the fact that the law as to the proper instruction for murder second degree was developing at the time of the appeal of the petitioner's conviction. Without a finding both that counsel was ineffective and the petitioner was prejudiced as a result, there is no basis for the granting of post-conviction relief. However, since the post-conviction court found that the petitioner was prejudiced because the jury was not properly instructed as to murder second degree, we will presume, for the sake of resolving this matter, that the post-conviction court found that appellate counsel was ineffective in not raising this issue on appeal. Having made this assumption, we conclude, as we will explain, that the record does not support such a finding. Accordingly, the trial court erred in granting post-conviction relief to the petitioner.

When the trial court charged the jury at the conclusion of the petitioner's trial, it added some additional language to the definition of "knowingly" as set out in Tennessee Code Annotated section 39-11-106(a)(20), which included the statement that second degree murder was either a nature-of-conduct or a result-of-conduct offense:

> The defendant, Ernest B. Eady, is charged . . . with the offense of second-degree murder. The defendant pleads not guilty to this offense. Any person who commits second-degree murder is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) that the defendant unlawfully killed the alleged victim, Robert Lee Fletcher, Jr.; and
>
> (2) that the killing was knowing.
>
> Knowingly means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's

-6-

conduct when the person is aware that the conduct is reasonably certain to cause the result. A defendant acts knowingly when he or she is aware of the conduct, or is practically certain that the conduct will cause the result, irrespective of his or her desire that the conduct or result will occur.

The requirement of knowingly is also established if it is shown that the defendant acted intentionally. Intentionally means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

Our supreme court's opinion in State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000), released on July 14, 2000, considered, *inter alia*, whether aggravated child abuse, as defined by Tennessee Code Annotated section 39-15-401, is a nature-of-conduct or result-of-conduct offense, with the defendant taking the latter position by saying "that one must actually be aware that her conduct would result in serious bodily injury to the child victim." Rejecting the defendant's view which would allow defendants to "argue that, while they in fact knowingly punished or spanked the child, they did not know harm would occur," the court concluded that child abuse offenses were nature-of-conduct offenses. Id. at 897. Illustrating the differences between nature-of-conduct and result-of-conduct offenses, the court explained why murder second degree, as an example, was a result-of-conduct offense:

An example of a result-of-conduct offense is second degree murder, which is defined as a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). In second degree murder, the result of the conduct is the sole element of the offense. The "nature of the conduct" that causes death or the manner in which one is killed is inconsequential under the second degree murder statute. The statute focuses purely on the result and punishes an actor who knowingly causes another's death. The intent to engage in conduct is not an explicit element of the state's case in second degree murder. Accordingly, a result-of-conduct crime does not require as an element that an actor engage in a specified course of conduct to accomplish the specified result.

Id. at 896. However, the question of how a jury was to be instructed as to "knowingly," or whether the pattern jury instruction as to "knowingly," which parroted Tennessee Code Annotated section 39-11-106(a)(20), was a proper instruction for the term, was not discussed.

Two years later, and after the petitioner's direct appeal had been concluded, in State v. Page, 81 S.W.3d 781 (Tenn. Crim. App. 2002), this court, setting out proper instructions for the "knowingly" component of murder second degree, first explained the lack of clarity as to the proper

instructions for the "knowingly" component of murder second degree in reviewing those which had been utilized by the trial court in that case:

> In fairness to the trial court, it was far from clear at the time of trial how the "knowing" *mens rea* for second degree murder should be defined in jury instructions. The trial court's charge on the definition of "knowing" was verbatim from T.P.I.–CRIM. 2.09 (5th ed. 2000). In Ducker, decided only months prior to the trial of this case, our supreme court did state that second degree murder was a "result-of-conduct" offense. 27 S.W.3d at 896. However, Ducker was not a second degree murder case; nor did Ducker discuss jury charges for result-of-conduct offenses. The actual holding in Ducker was that aggravated child abuse is a nature-of-conduct offense, rather than a result-of-conduct offense. Id. at 897. The first case to actually find reversible error in the failure to charge second degree murder as strictly a result-of-conduct offense was State v. Keith T. Dupree, No. W1999-01019-CCA-R3-CD, 2001 WL 91794, at *4 (Tenn. Crim. App. Jan. 30, 2001), no perm to app. filed; however, Dupree was filed several days after the trial of this case. Furthermore, the trial court in Dupree charged only nature of the conduct and circumstances surrounding the conduct; it omitted entirely the result of the conduct element.

Id. at 787-88 (footnote omitted).

Thus, at the time of the trial in Page, which occurred as this petitioner's direct appeal was being considered by this court, the proper instruction for "knowingly" was far from clear. The opinion of this court in Keith T. Dupree, the first appellate opinion reversing a conviction because of an incorrect instruction as to "knowingly," was released two weeks before this court's opinion as to this petitioner's direct appeal and dealt not with an instruction based upon the statutory definition of "knowingly," as was used in the petitioner's trial but, instead, with a truncated version.

Since the oral arguments in this matter, this court has rejected, in another post-conviction proceeding, the same claim as presented in this appeal. In Corwyn E. Winfield v. State, No. W2003-00889-CCA-R3-PC, 2003 WL 22922272 (Tenn. Crim. App. Dec. 10, 2003), this court determined that counsel had not been ineffective by failing to anticipate from the earlier decision in Ducker the later holding of Page:

> We begin our analysis of this question by noting that the Page opinion was filed more than nine months after the petitioner's appeal was concluded. Ducker was decided after the trial of this case; thus, defense counsel could only raise this issue on appeal under the plain error doctrine. See Tenn. R. App. P. 52(b). While it is arguable appellate counsel could have anticipated our holding in Page based

upon <u>Ducker</u> and <u>Dupree</u>, we do not find his performance was deficient for failing to do so. As we observed in <u>Page</u>, <u>Ducker</u> was not a second degree murder case and did not discuss jury charges. See <u>Page</u>, 81 S.W.3d at 788. Furthermore, the jury instruction in <u>Dupree</u> was distinguishable from the jury charge in both <u>Page</u> and the instant case. See <u>id.</u> In addition, <u>Dupree</u> was decided after the petitioner's brief was filed and shortly before oral argument. Given this chronology of events, we cannot conclude trial counsel's performance was deficient.

<u>Id.</u> at *12.

We find this analysis to be persuasive. The record contains no proof, either at trial or on appeal, that any defense attorneys did what the petitioner argues that his attorney was deficient for not doing, that is, recognized from our supreme court's language in <u>Ducker</u> that the pattern jury instructions then being utilized to define "knowingly" were defective. Considering a similar argument, that trial counsel had been ineffective in not recognizing he might argue, based upon an earlier Wisconsin decision, that only a single sexual act had occurred with his stepdaughter, although the abuse had continued over a period of weeks, the Wisconsin Court of Appeals concluded that "ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue." <u>State v. McMahon</u>, 519 N.W.2d 621, 628 (Wis. Ct. App. 1994).

Accordingly, we conclude that, while the petitioner's appellate counsel did not review the <u>Ducker</u> decision and recognize from it that the jury in his client's trial had not been properly instructed as to the "knowingly" element of murder second degree, this act was not "outside the wide range of professionally competent assistance," <u>Strickland</u>, 466 U.S. at 690, 104 S. Ct. at 2066, for the issue was not settled until the release of this court's opinion in <u>Page</u>, after the petitioner's direct appeal had been completed. Thus, the record does not support a finding that appellate counsel was ineffective.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, we reverse the post-conviction court's grant of relief to the petitioner and remand for entry of an order dismissing the petition for post-conviction relief. The petitioner's appeal bond is revoked and he is to be taken back into custody.

_____
ALAN E. GLENN, JUDGE