IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 14, 2004

## CHRIS HAIRE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for McMinn County**
**No. 03-038     Carroll Ross, Judge**

---

**No. E2004-00827-CCA-R3-PC - Filed May 3, 2005**

---

The petitioner, Chris Haire, appeals the McMinn County Circuit Court's dismissal of his petition for post-conviction relief. After a thorough review of the record and applicable law, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Charles M. Corn, District Public Defender; William C. Donaldson, Assistant Public Defender (post-conviction proceeding); and Steve McEwen, Mountain City, Tennessee (on appeal), for the Appellant, Chris Haire.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; Jerry N. Estes, District Attorney General; and William Reedy, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner stands convicted of second degree murder and facilitation of attempted second degree murder, *see* Tenn. Code Ann. §§ 39-13-210, 39-11-403(a) (2003), and is presently serving an effective twenty-five-year sentence for these convictions. *See State v. Chris Haire*, No. E2000-01636-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Knoxville, Jan. 22, 2002). The following summarizes the evidence presented at the petitioner's trial as recounted by this court in *Chris Haire*.

In the early morning hours of January 30, 1998, the petitioner shot and killed Michael Hite; the petitioner's friend, John Newberry, shot and injured Mark Allen. *Chris Haire*, slip op. at 1. Earlier, at approximately midnight, observers noted that the petitioner and Newberry were extremely intoxicated. *Id.,* slip op. at 2. Dee Dee Miller, a friend of both the petitioner and his wife, testified that Newberry brandished a gun that evening and that she persuaded him to give it to her

to prevent anyone from getting hurt. *Id.* However, Ashley Cranfield was later persuaded to bring the gun to the petitioner's residence. *Id., slip op. at 2-3.* At approximately 3:00 a.m., the petitioner and Newberry went to Michael Hite and Jeremy Stakeley's trailer. *Id., slip op. at 3.* Mark Allen and Barry Wade, who had been drinking at the trailer, had opted to stay and sleep on the sleeper sofa. *Id.* Jeremy Stakeley was at work and was not expected to return until morning. *Id.* Apparently, Allen, Wade, Newberry, and the petitioner watched television for a while, during which time Hite was asleep in his bedroom. *Id., slip op. at 4.* The petitioner was stumbling between the bathroom and Hite's bedroom when the other men heard a shot. *Id.* Apparently, the petitioner shot Hite in the head while he was asleep in his bed, and the shot killed Hite instantly. *Id.* Two shots were then fired in the direction of Allen and Wade, and Wade ran into a bedroom to hide. *Id.* Allen tackled the petitioner and wrestled the gun from the petitioner's hands, at which time Newberry took possession of the gun. *Id.* When Allen attempted to leave to summon help, Newberry shot Allen in the head. *Id.* Allen pretended to be dead until the petitioner and Newberry left, and then he went back inside the trailer to look for a telephone. *Id.* Wade then found Allen and took him to the hospital. *Id.*

When the police located the petitioner at 6:00 a.m. that morning, the petitioner was laying motionless on a bed. *Id., slip op. at 5.* The petitioner's eyes were open, but he was unresponsive and only awoke when the police moved him off the bed, at which time he became verbally abusive. *Id.* The police took a photograph of the petitioner, who grinned at the camera as the picture was taken. *Id.* The petitioner was taken to a local hospital, where his blood was drawn at 7:40 a.m. *Id.* At that time, the petitioner's blood alcohol level was .20 percent. *Id.* Further tests determined that both Newberry and the petitioner had gunshot residue on their hands. *Id.*

At trial, Dr. Ronald Toolsie, who autopsied Hite's body, testified that the shooting of Hite was not accidental. *Id.* Additionally, during cross-examination of the petitioner's wife, the state elicited from her that she had originally told the police that on the night of the shootings the petitioner had accused her of having an affair with Allen. *Id.* Based on this evidence, the jury found the petitioner guilty of second degree murder and facilitation of attempted second degree murder. *Id., slip op. at 6.*

The petitioner appealed his convictions and sentence, and this court affirmed the trial court's judgments. *Id., slip op. at 26-27.* The petitioner then filed a post-conviction petition, and the post-conviction court conducted an evidentiary hearing on the matter. The petitioner and his father testified on his behalf, and the petitioner's trial counsel, who also represented him on appeal, testified for the state.

The petitioner testified that he believed his counsel was deficient for failing to attack his first degree murder indictment, which he believed should have been a second degree murder indictment because the state did not put forth sufficient evidence to prove premeditation. On cross-examination, the petitioner admitted that his counsel could not have challenged or affected the indictment, as framing the indictment is solely within the purview of the grand jury.

The petitioner further testified that he believed that his counsel should have investigated his case more thoroughly, specifically the facts of his case that dealt with his intoxication at the time of the offense. Furthermore, counsel should have called the ballistics expert witness, Michael Kelley, to whom the petitioner paid a $500 retainer fee, to testify on the petitioner's behalf. The petitioner agreed to pay this retainer fee after counsel reviewed Mr. Kelley's curriculum vitae with the petitioner; however, the petitioner never received Mr. Kelley's final report nor was Mr. Kelley called to testify at trial. The petitioner believes that Mr. Kelley's testimony regarding the blood spatter at the crime scene would have been beneficial to his case because the state's expert witness, Dr. Toolsie, may have misidentified the source of the blood spatter. Dr. Toolsie testified that the blood spatter belonged to the victim, Hite; however, Allen, who testified for the state, reported that the blood in question was his, not the victim's. Moreover, the petitioner believed that Mr. Kelley could have testified regarding the gunpowder residue on the victim's hands and on the clothing of those involved in this offense. Furthermore, Mr. Kelley could have testified regarding the need for a quantitative test showing the precise amount of gunpowder discovered at the crime scene and its location and the need for a blood spatter analysis on the blood discovered on the victim's bedroom wall.

The petitioner also asserts that the testimony of Dr. Fenton Scruggs, a ballistics expert, would have been beneficial in rebutting Dr. Toolsie's testimony. Although the murder weapon, a Davis .380, was never recovered by the police, the petitioner believes that Dr. Scruggs could have testified about the Davis .380 handgun in general. Furthermore, although the petitioner's family gave counsel a newspaper clipping regarding an accidental shooting involving a Davis .380 handgun, counsel never further investigated the issue.

The petitioner testified that his counsel was deficient for failing to call Dr. Beeler, a psychologist whom the petitioner had seen three times, as a witness at trial. He believed that Dr. Beeler could have testified to the petitioner's state of mind at the time of the offenses. The petitioner testified that he never saw a medical doctor to discuss his state of intoxication at the time of the shootings. The petitioner also faulted counsel for failing to call Mark Barnes, one of the police officers who arrested the petitioner, to testify about the petitioner's state of intoxication at the time of his arrest. The petitioner further testified that his counsel was deficient for failing to keep him adequately advised about counsel's reasoning for not calling the above witnesses.

According to the petitioner, counsel was also deficient by failing to file a motion for a bill of particulars so that counsel could have based the defense theory on the evidence gained through the state's response to the bill of particulars. The petitioner believes that he was prejudiced by this omission. However, during the court's questioning of the petitioner and on cross-examination, the petitioner admitted that he was unsure of what exactly a bill of particulars is or how it differs from a discovery motion. The petitioner also testified that counsel should have attempted to suppress the petitioner's pretrial statements, which included obscenities he directed at the arresting police officers.

The petitioner also complained that his jury charge should have included an instruction on intoxication that is routinely included in jury charges for DUI offenses. After the court questioned him on this matter, the petitioner admitted that his counsel did make this request and that the trial court overruled the request. However, the petitioner testified that he was unsure whether counsel had raised this issue on appeal.

Finally, the petitioner testified that after reviewing his jury charge, he discovered that a definition of the term "knowing" was not included.

Roger Haire, the petitioner's father, testified on the petitioner's behalf. Mr. Haire testified that he could have been called as a witness at trial to testify about the petitioner's unfamiliarity with handguns. Mr. Haire admitted, however, that the petitioner's mother testified at trial about this very issue.

The petitioner's counsel at trial and on direct appeal testified on behalf of the state. Regarding the petitioner's allegation that he had failed to adequately investigate the case, counsel testified that he made extensive efforts to locate the weapon used by the petitioner because he believed that recovering the weapon was pivotal to establishing the petitioner's defense theory. Counsel also investigated the criminal histories of Wade, Allen, Hite, and Stakeley and specifically tried to establish that the defendant and the victim were friends and that Allen was a known drug-dealer. Moreover, counsel retained Michael Kelley as a firearms expert. However, after reviewing the facts of the crime, Mr. Kelley concluded that he would be unable to aid the petitioner's defense without being able to examine the gun used in the shootings. Counsel also consulted with Fenton Scruggs about the petitioner's case, but Mr. Scruggs reported that if he were subpoenaed to testify at trial, his testimony would be damaging to the petitioner. Additionally, counsel never received a report from either of these potential expert witnesses.

Counsel was aware that Dr. Toolsie, the state's expert witness, had a reputation for being very state-friendly, and therefore counsel concluded that any attempts to question Dr. Toolsie before trial would be fruitless. Furthermore, counsel did not believe that it was necessary to offer expert testimony to rebut Dr. Toolsie's testimony because such testimony would not have furthered the defense theory of an accidental shooting.

Counsel did not call police officer Mark Barnes as a witness regarding the extent of the petitioner's intoxication at the time of his arrest because the petitioner's extreme state of intoxication had been well-established by other lay testimony. As such, counsel also concluded that medical testimony on this issue was not warranted, as well.

Counsel testified that he did not file a motion for a bill of particulars in this case because he was very familiar with the facts of the case and because he had access to extensive discovery from the state. Regarding the petitioner's allegation that counsel failed to investigate the accidental shooting reported in a newspaper clipping he received from the petitioner's family, counsel did not recall whether he investigated the matter or whether there were other accidental

shootings by people using the Davis .380 handgun. Counsel also testified that he did not raise any issues at trial or on appeal regarding the jury instructions. A copy of the jury instructions was entered as an exhibit to the post-conviction hearing.

In the petitioner's instant appeal, he challenges the lower court's denial of his petition. The petitioner pursues complaints that he received deficient representation because his counsel failed to object to his jury instructions and failed to properly investigate and prepare his case. The petitioner further asserts that the trial court improperly applied an inapplicable enhancement factor when ordering him to serve an effective twenty-five-year sentence. After thoroughly reviewing the record and applicable law, we find that the petitioner's ineffective assistance of counsel claims lack merit and that his sentencing challenge has been waived by his failure to prepare an adequate record for review of this issue and by his failure to raise the issue in the post-conviction court. Accordingly, we affirm the judgment of the lower court.

## Post-Conviction Standard of Review

The law is settled that the post-conviction petitioner bears the burden of establishing at the evidentiary hearing his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

## Ineffective Assistance of Counsel

When a post-conviction petitioner seeks relief on the basis of ineffective assistance of counsel, he must establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Also, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. *See id.* at 697, 104 S. Ct. at 2069.

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 655 n.38, 104 S. Ct. 2039, 2050 n.38 (1984)).

The petitioner claims that his counsel performed deficiently by failing to object to the jury charge, which the petitioner asserts omits a definition of the term "knowingly" when defining the elements of second degree murder. The petitioner asserts that the court's reference to its earlier

definition of that term when defining the elements of facilitation of first degree murder is insufficient and that the definition provided in that earlier context was incorrect. Specifically, the petitioner asserts that the definition of "knowingly" provided by the trial court does not reflect this court's characterization of second degree murder as a result-of-conduct offense, rather than a nature-of-conduct offense. The petitioner posits that this court's unpublished opinion in *State v. Keith T. Dupree*, No. W1999-01019-CCA-R3-CD, slip op. at 3-6 (Tenn. Crim. App., Jackson, Jan. 30, 2001), which was released prior to the petitioner's filing of his notice of appeal, sets forth the proper definition of "knowingly" for second degree murder and therefore established a basis for challenging the petitioner's jury charge in his direct appeal.

The state concedes that the trial court's definition of "knowingly" does not reflect that second degree murder is merely a result-of-conduct offense. However, the state counters that counsel cannot be held deficient for failing to object to the charge at trial or raise the issue on direct appeal because this court's published opinion defining second degree murder as a result-of-conduct offense was released four months after the conclusion of the petitioner's direct appeal. *See State v. Page*, 81 S.W.3d 781, 788 (Tenn. Crim. App. 2002) (in second degree murder case, holding that instruction on the "knowing" element of the result-of-conduct offense of second degree murder lessened the state's burden of proof via allowing the jury to convict upon a mere finding that the defendant was aware of the nature of his conduct or the circumstances surrounding it). As such, the state argues that counsel cannot be held deficient for failing to challenge the charge when there was not yet a legal basis for arguing that it was incorrect. Furthermore, the state asserts that a trial court should not be required to repeat the definition of an element previously defined earlier in the charge.

First, we hold that the petitioner failed to establish any prejudice as a result of trial counsel's failure to challenge the trial court's instructional reference to its earlier definition of "knowingly" when defining the elements of second degree murder. Essentially, we discern no prejudice from this "incorporation by reference" method of instruction.

Second, we recognize that the definition of "knowingly" provided in the petitioner's jury instructions is identical to the instruction of "knowingly" provided in *Page*. Nevertheless, we conclude that any error in failing to provide a definition of "knowingly" that reflected that the crime was solely a result-of-conduct offense would have been harmless. *See State v. Faulkner*, 154 S.W.3d 48, 59-60 (Tenn. 2005) (*Page*-type "error" does not automatically rise to level of constitutional error and may be subject to simple harmless error analysis).

At the petitioner's trial, "[t]he theory of defense with regard to the Hite shooting was that the defendant, who was 20 years old, was extremely intoxicated and that the revolver accidentally discharged as the defendant was offering to show it to Hite." *Chris Haire*, slip op. at 2. To that effect, the petitioner testified at trial that he went to show the gun to the victim, who was sitting in bed, "propped up." *Id.*, slip op. at 6. The petitioner testified, "'I remember having the gun and like, when I was handing it to him, I remember it going off. . . . I never aimed the gun at him . . . never.'" *Id.* This factual basis in support of a theory of accidental shooting was in contrast to the state's physical-evidence-based opinion evidence. At trial, the medical examiner testified that the

fatal "wound was four to five inches above the [victim's] ear and a couple of inches in front of it." *Id.*, slip op. at 5. He opined that "the weapon was discharged outside the victim's peripheral vision" and that the victim's "head was down on the bed in a sleeping position when he was shot." *Id.*

We agree with *Page* that the erroneous instruction in a second degree murder case is more critical when *mens rea* is the pivotal factual issue, as opposed to a situation, for instance, when the dispute centers around the identity of the perpetrator. *See Page*, 81 S.W.3d at 789-90. In the present case, however, the petitioner made no claim at trial that he was aware of his *conduct of firing* the bullet which *then accidentally* struck the victim. *See Chris Haire*, slip op. at 6. We perceive that had that been the theory of the defense, the risk of an improper second degree murder conviction based upon awareness of the nature of that conduct or of the circumstances of the victim's presence would have been heightened. *Cf. Page*, 81 S.W.3d at 784-85 (defendant testified that he intended to hit the victim with a baseball bat but was surprised to learn that the blow had caused the victim's death). As presented by the petitioner, however, the conduct in question *of which the petitioner was aware* was showing the weapon to the victim; he essentially denied that he knowingly discharged the weapon. Thus, the conduct to which he confessed, though perhaps still blameful in tort or criminal liability, is too attenuated to be of the "particular nature" that proximately or foreseeably results in a fatality. In these circumstances, we discern that had the jury accredited the petitioner's testimony, it would have acquitted the petitioner of second degree murder despite the erroneous instructional references to nature of conduct and the circumstances surrounding the conduct. Accordingly, the post-conviction court record supports the lower court's determination that the petitioner failed to establish by clear and convincing evidence the necessary prejudice from any possible deficient performance of counsel.

We turn next to the petitioner's claims that his counsel failed to investigate and prepare his case properly. The petitioner asserts (1) that his counsel did not put forth sufficient evidence demonstrating the petitioner's level of intoxication, (2) that he failed to conduct a necessary pretrial interview of the state's expert witness, Dr. Toolsie, (3) that he failed to call certain expert witnesses who could have aided in the petitioner's defense, (4) that his counsel did not adequately investigate his case because counsel did not file a motion for a bill of particulars or further investigate information in a newspaper clipping about an accidental shooting with a gun similar to the murder weapon, (5) that his counsel failed to move to suppress statements made by the petitioner, and (6) that his counsel failed to keep him adequately advised regarding the preparation of his defense. We find that the petitioner has failed to demonstrate deficient performance or resulting prejudice with regard to each of these claims.

First, we find that counsel was not deficient by failing to introduce further evidence of the petitioner's intoxicated state because the evidence introduced at trial sufficiently demonstrated the petitioner's extreme state of intoxication at the time of the offense; the petitioner had a .20 percent blood alcohol level at the time of his arrest, and an arresting officer testified regarding the petitioner's alcohol-induced trance-like state at the time of his arrest and his subsequent bizarre behavior. *See Chris Haire*, slip op. at 4-5.

Second, the petitioner has failed to demonstrate how a pre-trial interview of Dr. Toolsie would have produced a different result at trial. The petitioner asserts that a pre-trial interview of Dr. Toolsie would have revealed that Dr. Toolsie had not tested the blood spatter present in the victim's bedroom to identify the source of the blood. Accordingly, the petitioner argues that counsel could have impeached Dr. Toolsie during cross-examination if he had been aware of Dr. Toolsie's failure to identify the blood source before trial. At trial, Dr. Toolsie's apparently erroneous identification of the source of blood spatter in the victim's bedroom was revealed by the testimony of Mark Allen. Furthermore, counsel referenced Dr. Toolsie's error in closing arguments. Because Dr. Toolsie's error was revealed to the jury and because counsel referenced that error in his closing arguments, we find that the petitioner has not demonstrated how the outcome of his trial would have been different if counsel had received this information pre-trial as opposed to during trial. *See Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067.

Third, the petitioner has failed to demonstrate any resulting prejudice from counsel's failure to call certain expert witnesses. *See id.* Counsel testified that these witnesses reported that they either could not testify competently about the petitioner's case because of missing evidence or told counsel that their testimony would have been detrimental, not beneficial, to the petitioner's case. The post-conviction court implicitly accredited this testimony, and the petitioner did not introduce any proffer regarding what these experts would have said if they had been called to testify at trial. *See Black*, 794 S.W.2d at 757-58 ("[I]f a petitioner is able to establish that defense counsel was deficient in the investigation of the facts or calling a known witness, the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*.").

Fourth, the petitioner has failed to demonstrate that counsel should have filed a motion for a bill of particulars or that counsel's failure to investigate the accidental shooting incident reported in a newspaper article affected the outcome of his trial. *See Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067; *Baxter*, 523 S.W.2d at 936. Specifically, at the post-conviction hearing, the petitioner admitted that he did not know what a bill of particulars is, and counsel testified that he was very familiar with the facts of the petitioner's case pre-trial and that he filed a motion requesting extensive discovery from the state, which he received. Additionally, the petitioner failed to present any proof at the evidentiary hearing that further investigation into the facts reported in the newspaper clipping would have resulted in a different outcome at trial. As this court concluded when addressing the petitioner's direct appeal, the evidence at trial conclusively supported the jury's finding that the petitioner did not accidentally fire his gun. *See Chris Haire*, slip op. at 7-8.

Fifth, the petitioner alleges that his counsel provided deficient performance by failing to move to suppress certain statements that he made during his arrest. The petitioner contends that while it is unclear whether the petitioner had been read his *Miranda* rights before making the statements in question, it is clear that he was in custody at that time and therefore the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), had been triggered. Furthermore, the

petitioner argues that his intoxicated state rendered him incapable of making a knowing, intelligent, and voluntary waiver of his rights. The petitioner seems to object to the admission of the profane language he used after the arresting police officers roused him from his trance-like state. We find that although the petitioner may have been in custody at the time he made the statements at issue, there is no indication in the record that the petitioner made these statements in response to police interrogation. Voluntary, spontaneously-made statements do not trigger an obligation by police to read a custodial arrestee the *Miranda* litany. *See State v. Walton*, 41 S.W.3d 75, 85 (Tenn. 2001). Thus, the post-conviction record supports the lower court's ruling that the petitioner failed to establish this claim.

Finally, the petitioner asserts that his counsel performed deficiently by failing to keep him adequately informed about the preparation of his case throughout the course of counsel's representation. Specifically, the petitioner asserts that counsel failed to communicate with him regarding information received from potential expert witnesses or inform him why those experts did not testify at trial. However, the petitioner has failed to allege or demonstrate how he was prejudiced by this alleged omission. *See Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067. Accordingly, this allegation of ineffective assistance of counsel does not entitle the petitioner to relief.

## Challenge to Enhancement of Sentence

The petitioner asserts that his effective twenty-five-year sentence is a result of improperly applied enhancement factors. Specifically, the petitioner asserts that the trial court impermissibly applied three enhancement factors to his second-degree murder sentence in violation of *Blakely v. Washington*, 542 U.S. __, 124 S. Ct. 2531 (2004), specifically that the defendant was a leader in the commission of the offense, *see* Tenn. Code Ann. § 40-35-114(2), that the victim of the offense was particularly vulnerable because of mental disability, *see id.* § 40-35-114(4), and that the defendant possessed or employed a firearm during the commission of the offense, *see id.* § 40-35-114(9). In this court's 2002 decision addressing the petitioner's direct appeal, which preceded the 2004 *Blakely* decision, the petitioner challenged his sentence and the trial court's application of two of the enhancement factors outlined above, and this court affirmed the petitioner's sentence. *Chris Haire*, slip op. at 21-26.

The petitioner has waived the issue for consideration in this appeal; he failed to raise this allegation in his post-conviction petition, thereby providing the lower court the opportunity to address the issue. The Post-Conviction Procedure Act states, "A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ." Tenn. Code Ann. § 40-30-106(g) (2003). Moreover, the record does not contain a transcript of the petitioner's sentencing hearing. The petitioner bears the burden of preparing an adequate record for appellate review, Tenn. R. App. P. 24(b), and failure to do so results in waiver of any issues for which there is not an adequate record for review, Tenn. Ct. Crim. App. R. 10(b). As such, the petitioner has waived this issue for consideration in the instant appeal. Furthermore, our supreme court has recently held that notwithstanding the United States Supreme Court's holding in *Blakely*, the Tennessee sentencing

structure does not run afoul of the Sixth Amendment. *State v. Gomez*, __ S.W.3d __, No. M2002-01209-SC-R11-CD, slip op. at 27 (Tenn. Apr. 15, 2005).

In conclusion, none of the petitioner's allegations merit relief, and therefore, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE