IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 29, 2008

## STATE OF TENNESSEE v. MARK ALTON MAYFIELD

**Appeal from the Criminal Court for Cumberland County**
**No. 8966     David A. Patterson, Judge**

---

**No. E2007-01453-CCA-R3-CD - Filed November 12, 2008**

---

The defendant, Mark Alton Mayfield, appeals from his convictions by a jury in the Criminal Court for Cumberland County for carjacking, aggravated robbery, and aggravated kidnapping, class B felonies. He was sentenced to ten years for each offense to be served concurrently for an effective sentence of ten years. He contends: (1) the evidence is insufficient to convict for each offense; (2) the trial court improperly included language referring to the nature of conduct and the circumstances surrounding the conduct in its jury instructions; and (3) the trial court improperly sentenced the defendant to more than the minimum sentence as prohibited by Blakely v. United States, 542 U.S. 296, 124 S. Ct. 2531 (2004). We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

David Neal Brady, District Public Defender, John B. Nisbett, III (on appeal) and Joe L. Finley, Jr. (at trial), Assistant Public Defenders, for the appellant, Mark Alton Mayfield.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; Anthony J. Craighead, Interim District Attorney General; and Gary McKenzie, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Glenna Hardy, the victim, testified at the trial that at approximately 4:00 p.m. on October 24, 2005, she was in a grocery store parking lot putting her groceries into her 2003 black Cadillac CTS. She said she got into her car, at which point she saw the defendant standing beside his car in front of her. She said that the defendant was wearing a windbreaker and that she thought he had a gun. She said she could see the gun protruding from his coat. She claimed that it looked as if he were trying to conceal the gun, but that she could see it.

Ms. Hardy testified the defendant came over to her and told her to take him to Walmart. She said he got into the passenger side of her car. She said she was scared and felt she had no choice but to drive the defendant to Walmart. She stated she thought she would be killed if she did not do so. She stated she talked to the defendant to try to calm him down. Ms. Hardy claimed the defendant said his wife worked at Walmart in the layaway department, which was why he needed to go to the back of Walmart. She stated that she drove him to Walmart and that the defendant pointed the gun at her for the duration of the drive. Ms. Hardy said that her daughter called during the drive but that she was too frightened to alert her daughter to her predicament. Ms. Hardy said she thought the defendant would have killed her if she had told her daughter what was happening.

Ms. Hardy testified that when they arrived at Walmart, the defendant reached over, grabbed the keys, and turned off the car. She said he took the gun from beneath his coat and laid it on his leg. She testified he said, "Lady, I sure hate to do this." She said she thought he was going to kill her. She said he got out of the car and walked around to the driver's side. She said she thought the defendant held his gun in his hands when he walked around the car, but she was not sure. She claimed that the barrel was protruding from the defendant's coat but that the gun was not pointed at her. She said he told her to give him her money. She removed her credit cards and money from her purse. She said that at this point, she thought he still held her car keys. She said that he took her checkbook and her cell phone. After she got out of the car, the defendant got into it. She said the defendant told her he ran out of medication and "dope" and drove away in her car.

She testified that because she thought the defendant would return to kill her, she ran to an old empty trailer and climbed into it. She said she realized that no one would see her there and she climbed out of it. She said she flagged down a passing van, which took her to a gas station, where the police were called.

She testified that she gave a statement to the police. She said the police took her back to the grocery store parking lot, where she showed them the defendant's parked car. She stated she later identified the defendant in a photographic lineup as her assailant. She said that her car was subsequently returned to her and that it had been found in Indiana. She stated the value of the 2003 Cadillac was more than $10,000.

Crossville Police Officer Ken Cherry testified that he responded to a carjacking dispatch on October 24, 2005. He said Ms. Hardy told him what had happened. He said he and Detective Sherrill investigated the carjacking, aggravated kidnapping, and aggravated burglary. He said he went with Ms. Hardy to the parking lot where she showed him where she had been parked and the car that was parked in front of her. He said that the car's license plate was from Bradley County and that the car registration was in the defendant's name. He said he had an alert sent to all officers to be on the lookout for the victim's car and the defendant. He said that he went to Ms. Hardy's home with a photographic lineup and that she selected the defendant's photograph.

Officer Jennifer Johnson of the Seymour, Indiana, Police Department testified that she was working on October 28, 2005. She said that they had received a dispatch from the Crossville Police Department informing them that the carjacker was staying at a Hampton Inn in Seymour, Indiana. She said that she and other officers responded and found a Cadillac fitting the description of the

-2-

missing car parked next to dumpsters behind a closed restaurant. She stated the car's license plate matched that of the missing car, as well. She said the officers blocked the car. She stated that she and other officers waited outside the hotel while a detective went inside to find out the defendant's room number from the front desk. She said the detective had the front desk clerk call the defendant to ask him to come sign a receipt. She stated the defendant came to the front desk, where officers handcuffed him, informed him of his rights, and told him he was under arrest for crimes in Crossville, Tennessee. She said the officers found the keys to the Cadillac in the defendant's room. She said, however, they found no gun and no credit cards in either the car or the defendant's room.

The defendant testified that he, his wife, and three children lived in Cleveland, Tennessee. He said he worked as a home improvements salesman before the events in question occurred. He stated he had been to two drug rehabilitation programs before this incident for addiction to prescription pain relievers. He said he relapsed after a dental procedure and became dependent on hydrocodone. He said that he was on many prescriptions and that these and his addiction affected his judgment. He said he knew when his dentist prescribed hydrocodone that he would have "problems," but he admitted that he decided to take the prescription drug in spite of this knowledge.

The defendant testified that he was on many prescription drugs for depression at the time in question, that he did not remember much of the events, and that his true personality would never hurt anyone. He said he did not know why he would have taken the victim's car, as he did not need one. He claimed his own car ran well and that at the time of trial, his son was driving it. The defendant said he remembered having a gun, but he also claimed he had sold it in Crossville two to three days before the incident in order to purchase drugs. He stated he did not remember having a gun at the time of the incident or during the drive to Indiana. He said he did not remember taking any money from the victim. He said he did not remember telling the victim to give him her credit cards, cell phone, or checkbook. He then claimed to remember asking the victim for her checkbook, but he stated that she refused to give it to him. He asserted he never intended to harm the victim and never intended to shoot her.

The defendant testified he knew he had someone else's car when he realized he was at the RCA Dome in Indiana. He asserted that he did not remember driving from Cleveland to Crossville and that he did not know how he drove there. He said he recalled staying at a hotel in Crossville near the interstate. He also stated he had no reason to drive to Indiana, as he knew no one there. He said he remembered driving with his son and their church group to Indianapolis before these events occurred for "World Bible Quiz."

The defendant testified that he remembered where he had parked the car in Indiana. Although initially saying he did not remember parking near dumpsters, he acknowledged that parking it there made it look as if he were trying to conceal the car. He said he was frightened when he realized he was in Indiana. He said he did not remember either disposing of the victim's credit cards or having them in Indiana. He estimated he had been in Crossville for four or five days. He said he called his family from Indiana.

The defendant testified that he did not previously know the victim and that he had no reason to think she had fabricated the events giving rise to his prosecution. He did not deny that he had

done any of the acts of which she accused him, but he stated that he did not remember doing them. He stated that his drug problem had not manifested itself in this way previously and that the events giving rise to these events seemed incredible. He said that when he abused medications in the past, he slept much of the time. He admitted, however, that he had realized he had driven under the influence in the past while abusing prescription drugs. He also acknowledged he had convictions for DUI, theft under $500, and criminal simulation. He said that he had written bad checks but that he had not been convicted for those offenses.

The defendant's wife, Selina Mayfield, testified that she and the defendant had been married for almost twenty years. She said the defendant was addicted to pain medication. She said the year before the events in Crossville, the defendant had been to a drug rehabilitation program and had been drug-free. She said that he went to the dentist about one month before the events in Crossville occurred and that he was prescribed pain medication. According to Ms. Mayfield, the defendant was not himself after he took the medication. She said the defendant would not go to work. She said that the defendant had been acting irrationally and that he left home. She said she next heard from him when he was incarcerated. She said her husband had never been a violent person, but she acknowledged that drug use can make someone act differently than he or she normally would. She said the defendant had been convicted in March 2005 of theft of property valued less than $500 and criminal simulation. She admitted these convictions occurred because he was addicted to pain pills. She stated that the defendant, in this earlier episode, had been prescribed medication by his psychiatrist. She agreed that an addict might steal because he needed money to purchase more prescribed drugs.

**I.**

The defendant contends the evidence was insufficient to convict him of the offenses. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The defendant's brief does not point to or rely on any perceived deficiency in the evidence. The victim's testimony shows fully that she was kidnapped, robbed, and carjacked by the defendant, who used a deadly weapon to accomplish each of these offenses. Subsequent testimony confirms that her car was found in Indiana, to where the defendant had driven it. The defendant's testimony that he did not remember any of these events and that he was abusing prescription medication at the time did not rebut the evidence against him. We conclude that the evidence was sufficient to convict the defendant of all three offenses.

**II.**

The defendant claims that the trial court committed plain error by instructing the jury on mens rea definitions that included language pertaining to the nature of the conduct and the circumstances surrounding the conduct because he claims aggravated kidnapping, aggravated robbery, and carjacking are result-of-conduct crimes. See State v. Page, 81 S.W.3d 781 (Tenn. Crim. App. 2002). In Page, this court held that it was reversible error to include in the jury instructions for second degree murder language referring to the nature of the conduct or awareness of the circumstances surrounding the conduct because second degree murder was "strictly a result-of-conduct offense." Id. at 788.

The State responds that the defendant waived this claim by not objecting to the instructions at the time as required by Tennessee Rule of Appellate Procedure 36(a) to receive relief and by not mentioning this claim in his motion for new trial as required by Tennessee Rule of Appellate Procedure 3(e). The State also claims that the five criteria enumerated in State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000), have not been satisfied, such that any error in the jury instructions was harmless. Particularly, the State asserts that no breach of a clear and unequivocal rule of law has occurred and that no substantial right of the defendant has been affected.

We agree with the State that the defendant has waived any claim regarding the jury instructions by not including it in his motion for new trial and raising this issue for the first time on appeal. The defense was not required to object contemporaneously to the claimed erroneous jury instructions. See Tenn. R. Crim. P. 30(b). To raise this issue on appeal, however, the defendant needed to present it in his motion for new trial. T.R.A.P. 3(e). He did not. As the defendant did not raise his jury instruction claim in his motion for new trial, the issue is waived. T.R.A.P. 3(e).

The defendant is also not entitled to relief for plain error. We note that our supreme court has effectively limited Page. See State v. Vaughn, 202 S.W.3d 106, 122 (Tenn. 2006); State v. Faulkner, 154 S.W.3d 48, 58-59 (Tenn. 2005). In Faulkner, our supreme court held that including nature-of-conduct and circumstances-surrounding-the-conduct language in a jury instruction for a result-of-conduct offense was harmless error and not a "misstatement of an element" of the offense. Faulkner, 154 S.W.3d. at 60. The court also held that the language pertaining to the nature of the conduct and the circumstances surrounding the conduct did not "lessen the burden of proof because it did not relieve the State from proving beyond a reasonable doubt that the defendant acted knowingly." Id. at 59. Hence, inclusion of nature-of-conduct and circumstances-surrounding-the-conduct language in the jury instructions is not constitutional error when the instructions also include the correct result-of-conduct definition. Id. at 58-59.

In the present case, the trial court included in its definition of "intentionally" both nature-of-conduct and result-of-conduct language. For "knowingly," the court included nature-of-conduct, circumstances-surrounding-the conduct, and result-of-conduct language. We hold that inclusion of language addressing the nature of conduct, the circumstances surrounding the conduct, and the result of conduct did not constitute plain error.

**III.**

The defendant contends that the trial court improperly ordered him to serve ten-year sentences. He argues that the trial court could not have sentenced the defendant to anything greater than the minimum sentence using the facts of the jury verdict and that the longer sentence violates the defendant's Sixth Amendment right to trial by jury. The State responds that the sentence is proper because it was imposed after the Tennessee Legislature modified the sentencing statutes to comply with Blakely v. United States, 542 U.S. 296, 124 S. Ct. 2531 (2004). See Cunningham v. California, 127 S. Ct. 856, 871 n.18 (2007) (citing T.C.A. § 40-35-210(c) (Supp. 2005) as an example of sentencing modifications complying with Blakely).

We agree with the State. The legislature modified the sentencing statutes effective June 7, 2005. 2005 Tenn. Pub. Acts page no. 796-97. The date of the offenses giving rise to these convictions was October 24, 2005. Thus, the defendant was sentenced under the 2005 amendments and has no valid Blakely argument.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE