# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 18, 2011

## STATE OF TENNESSEE v. CARL J. WAGNER

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-305      Steve Dozier, Judge**

---

**No. M2010-00992-CCA-R3-CD - Filed July 20, 2011**

---

A Davidson County Criminal Court jury convicted the defendant, Carl J. Wagner, of second degree murder, *see* T.C.A. § 39-13-210 (2006); first degree murder committed in the perpetration of an aggravated robbery, *see id*. § 39-13-202(a)(2); and especially aggravated robbery, *see id*. § 39-13-403.  The trial court imposed concurrent sentences of 22 years' incarceration, life imprisonment, and 22 years' incarceration, respectively, and merged the conviction of second degree murder into the conviction of first degree murder.  On appeal, the defendant challenges the sufficiency of the evidence to support his convictions.  We determine that there is insufficient evidence to support the defendant's convictions of first degree murder committed in the perpetration of an aggravated robbery and especially aggravated robbery.  We also determine, however, that there is sufficient evidence to support the defendant's conviction of second degree murder.  Accordingly, we affirm the defendant's conviction in count one and remand that count for resentencing, and we reverse and dismiss the charges in counts two and three.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Reversed and Dismissed in Part; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Carl J. Wagner.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson III, District Attorney General; Pamela Anderson and J. Wesley King, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On August 27, 2008, the defendant shot the victim, Adriel Charles Powell, in the laundry room of a Nashville apartment complex during a botched drug deal. The victim suffered two wounds, one to his neck and another to his head. He died within minutes on the laundry room floor. Soon thereafter, two men delivered the defendant, who had also suffered two gunshot wounds, to the emergency room of Vanderbilt Children's Hospital where he was transferred to the adult facility and received treatment and hospitalization for his wounds.

Metro Nashville Police Department ("Metro") Officer William McKay responded to the call of "shots fired" at the Herman Street apartments. He arrived to see four or more people standing outside the laundry room in a courtyard area of the apartment complex. One person pointed to the laundry room and informed Officer McKay that there was "a dead person in the laundry room." Another person told Officer McKay that "there's a guy in there with his brains out." Officer McKay approached the laundry room and noticed a bullet hole in a window. The door to the laundry room was locked, but he could see a man lying on the floor near the doorway. Officer McKay secured the scene and called for the homicide detectives because it was obvious to him that the man was dead.

Metro Sergeant Danny Orr and Metro Crime Scene Investigator Felicia Evans prepared detailed diagrams of the scene documenting the location of all evidence collected. Investigator Evans documented thirteen distinct "reddish-brown stains" at the scene and collected swabs from each. Investigators collected swabs from stains found on two vehicles in the parking lot, one on the courtyard walkway, five on the courtyard railing, and five inside the laundry room or within the doorway of the laundry room. Investigators also collected three nine-millimeter shell casings in the courtyard and two .45 caliber shell casings in the laundry room. They also recovered a nine-millimeter magazine containing six unspent cartridges in the courtyard. Inside the laundry room, investigators found two Federal auto-cartridge .45 caliber shell casings. When they moved a hat found near the victim, investigators discovered a bullet underneath that had passed through the hat. Investigator Evans also collected gunshot residue tests from the victim, the defendant, and another individual, Thalis O. Smith. At the hospital, investigators recovered $51.25, "green plant material," a holster, and clothing from the defendant's belongings.

Metro Detective Michael Moss was on his way to the apartment complex when he received a call advising him to go to Vanderbilt Hospital because an individual had just been admitted with gunshot wounds. At the entrance of the hospital, he met Mr. Smith who said that he had brought the defendant to the hospital. Detective Moss spoke with the defendant in the emergency room, and the defendant told him that he was standing in the grassy area of the apartment complex when he heard shots and ran. Soon realizing that he

had been shot, he ran to Mr. Smith's vehicle for help. Both Mr. Smith and the defendant denied any involvement in the shooting.

Tennessee Bureau of Investigation ("TBI") Special Agent Patrick Ihrie performed deoxyribonucleic acid ("DNA") analysis of the "reddish-brown stain" swabs collected at the scene. Swabs collected from the courtyard area and doorway contained blood matching the defendant's DNA. Swabs collected from inside the laundry room contained blood matching the victim's DNA. Of the five swabs collected from the courtyard railing, four contained blood matching the defendant's DNA, and one contained blood matching the victim's DNA.

Fingerprint evidence did not establish either the defendant's or the victim's presence at the scene. TBI testing, however, confirmed that the "greenish plant material" collected from the defendant was marijuana. Gunshot residue testing revealed an absence of gunshot residue on Mr. Smith's hands and the presence of gunshot residue on the victim's hands. The gunshot residue testing was inconclusive concerning the defendant's hands. Examination of shell casings and bullets found at the scene revealed that the .45 caliber casings had been fired from one weapon and that the nine-millimeter casings had been fired by a second weapon. No weapons were found at the scene.

Doctor Bruce Levy, Chief Medical Examiner for the State of Tennessee and Medical Examiner for Davidson County, performed the victim's autopsy. He determined the manner of death to be homicide and the cause of death to be gunshot wounds. The victim suffered two gunshot wounds. One wound occurred on the left side of his head. Doctor Levy recovered a .45 caliber bullet from the middle region of the victim's brain. He opined that the head wound would have produced "immediate unconsciousness rapidly progressing to death . . . within a m[a]tter of . . . a few minutes." The victim suffered a second wound to the neck, but that wound did not penetrate the spinal cord or impact any significant blood vessels. Toxicology testing revealed that the victim had used marijuana within a day of the shooting.

Metro Detective James C. Capps interviewed Mr. Smith who he described as "very anxious" during the interview. Mr. Smith told Detective Capps that he did not know anything about the shooting, did not know the defendant, and only gave "the guy" a ride to the hospital when approached for help.

Detective Capps interviewed the defendant on August 28, 2008, as the defendant recuperated from his injuries at Vanderbilt Hospital. The defendant told officers that he "never pictured [him]self getting shot." He initially said that he had gone to the apartments to visit a "female" named Rita. As he stood in the courtyard, he "heard some gun

shots . . . looked down and . . . [realized that he] was bleeding." The defendant said that "two big dudes carried [him] to the door" of the hospital.

In his statement to the police, the defendant explained that he was not carrying a gun and used a holster "to keep change and shit in." The defendant ultimately admitted, however, that he was carrying a .45 caliber semi-automatic handgun on the day of the shooting and that he went to the laundry room of the apartment complex to purchase marijuana. He said that "two dudes" were in the laundry room and that one went to retrieve the marijuana from around a corner inside the laundry room. When the man returned with a backpack, the other man began to shoot at the defendant, so the defendant shot back. The defendant said that he was unsure whether he hit the man with the gun because that man fled the laundry room. The "little dude" with the backpack, however, was shot. The defendant said that he was "just trying to get some weed" and that the "dude was trying to kill [him]." The defendant also admitted that Rita had advised him that the laundry room would be a location to buy drugs and that she had driven him to the hospital. The defendant could not recall where he had dropped his gun, but he told officers that Mr. Smith was a friend of Rita's who helped carry him to the door of the hospital and could possibly locate the gun.

Neither the gun nor the backpack were found at the scene. Officers recovered a bag of marijuana and $51.25 from the defendant's belongings at the hospital. The defendant claimed that the bag of marijuana was some he had brought with him that day but was unwilling to share with Rita and the others because of its premium quality.

With the conclusion of Detective Capps's testimony, the State rested its case. Following a *Momon* colloquy, the defendant elected not to testify. *See Momon v. State*, 18 S.W.3d 152 (Tenn. 1999). The defendant presented no evidence.

Based upon the evidence presented, the jury convicted the defendant of second degree murder as a lesser included offense of premeditated first degree murder, first degree murder committed in the perpetration of an aggravated robbery, and especially aggravated robbery. The trial court imposed a life sentence for the first degree murder conviction by operation of law. *See* T.C.A. § 39-13-208(c). At a separate sentencing hearing, the trial court imposed a 22-year sentence for the especially aggravated robbery conviction and, ostensibly, a like sentence for the second degree murder conviction to be served concurrently with the life sentence.[1] The trial court then merged the second degree murder conviction into

---

[1] Because the trial court merged the second degree murder conviction into the first degree murder conviction, there was no need to impose a separate sentence. But for our determinations regarding the sufficiency of the evidence to support the convictions, we would have directed the trial court to vacate the

(continued...)

the conviction for first degree murder.

The defendant's sole issue on appeal is an attack on the sufficiency of the evidence to support his convictions.[2]  The State initially asserts that the appeal should be dismissed for the defendant's failure to file a timely notice of appeal.  The State correctly notes that the notice of appeal was filed on June 14, 2010, more than three months after the denial of the defendant's motion for new trial on February 24, 2010.  *See* Tenn. R. App. P. 4(c).  The State argues that the defendant failed to seek a waiver of the timely filing and that the interest of justice does not require this court to waive the timely filing requirement.  *See* Tenn. R. App. P. 4(a).  This court's record, however, reveals that on May 5, 2010, the defendant did in fact file a motion with this court requesting this court to accept a late-filed notice of appeal.  Attached to the motion is an affidavit of counsel averring that trial counsel misrepresented to appellate counsel that a notice of appeal had been filed and that when appellate counsel realized one had not been filed, he immediately sought permission from this court to waive the timely filing requirement.  On May 14, 2010, this court granted the defendant's request to accept a late-filed notice of appeal, ruling that the interest of justice required us to do so.  Accordingly, this court has previously ruled that the defendant's appeal should proceed.

Turning now to the defendant's claim that the evidence is insufficient to support his convictions, we review this claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003).  This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

Recently, our supreme court adopted the position of the United States Supreme Court "that direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes,* 331 S.W.3d 370, 381 (Tenn. 2011).  In *Dorantes,* the supreme court specifically rejected the holding in *State v. Crawford,* 470

---

[1](...continued)
sentencing judgment for second degree murder.

[2] In his brief, the defendant erroneously states that he was convicted of premeditated first degree murder and does not present any argument relative to his felony murder conviction.  Likewise, the State, while noting this error in the defendant's brief, erroneously states that the defendant was convicted of first degree murder committed in the perpetration of a theft, rather than first degree murder committed in the perpetration of an aggravated robbery.

S.W.2d 610 (Tenn. 1971), requiring that in a wholly circumstantial evidence case the State "prove facts and circumstances 'so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt.'" *Id.* at 380 (quoting *State v. Crawford,* 470 S.W.2d 610, 612 (Tenn. 1971)). Accordingly, the State is no longer required to "exclude every other reasonable hypothesis save the guilt of the defendant" to obtain a conviction based solely on circumstantial evidence and need only establish the constitutionally required standard of proof beyond a reasonable doubt. *Dorantes*, 331 S.W.3d at 381.

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

Tennessee Code Annotated defines first degree murder, as is applicable in this case, as "[a] killing of another committed in the perpetration or attempt to perpetrate any . . . robbery." T.C.A. § 39-13-202(a)(2). The Code defines second degree murder, as is applicable in this case, as "[a] knowing killing of another." *Id*. § 39-13-210. "Especially aggravated robbery is robbery . . . (1) accomplished with a deadly weapon; and (2) where the victim suffers serious bodily injury." *Id*. § 39-13-403(a). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401.

The defendant argues that he acted in self-defense or, alternatively, that he and the victim were engaged in mutual combat at the time of the killing. Thus, he contends, he should have either been acquitted or convicted of only voluntary manslaughter relative to the victim's death. As it relates to the first degree murder conviction, the defendant's argument ignores the fact that he was convicted of first degree murder committed in the perpetration of an aggravated robbery, not premeditated first degree murder. Furthermore, the jury chose not to accredit the defendant's claim of self-defense, as was within its province to do.

Although not argued by the defendant, we perceive a greater issue concerning the sufficiency of the evidence to support his convictions for first degree murder committed in the perpetration of an aggravated robbery and especially aggravated robbery in that the

defendant's confession alone provides the only evidence that a backpack was taken from the victim. To be sure "a conviction cannot be based solely on a defendant's confession and, therefore, . . . the State must present some corroborating evidence to establish the corpus delicti." *See State v. Banks*, 271 S.W.3d 90, 140 (Tenn. 2008) (citing *State v. Smith*, 24 S.W.3d 274, 281 (Tenn. 2000)). The term corpus delicti refers to "the body of the crime [or] evidence that a crime was committed at the place alleged in the indictment," and the State needs "only slight evidence of the corpus delicti . . . to corroborate a confession and sustain a conviction." *Smith*, 24 S.W.3d at 281. When a defendant confesses to a crime, the corroborating evidence "'need not be as convincing as the evidence necessary to establish a corpus delicti in the absence of any confession.'" *State v. Housler*, 193 S.W.3d 476, 490 (Tenn. 2006) (quoting *Ricketts v. State,* 241 S.W.2d 604, 606 (Tenn. 1951)).

In this case, the defendant admitted in his statement to the police that he grabbed the victim's backpack as he fled the laundry room. The defendant, however, denied that the marijuana or money found among his belongings at the hospital came from the backpack. The backpack was never recovered. No item that could be identifiably linked to the victim was found in the defendant's possession. The State presented no other evidence to even show the existence of a backpack, much less that one was stolen from the victim and that it contained marijuana or money. Notably, in relation to his argument concerning his especially aggravated robbery conviction, the defendant argues that he should have been convicted of only theft and concedes that he only took the backpack "instinctively" after the shooting occurred. Nevertheless, no evidence corroborates the defendant's confession concerning the existence of the backpack or its taking. As such, we conclude that the evidence is insufficient to support his conviction of especially aggravated robbery. That being said, the evidence is ipso facto insufficient to support the defendant's conviction of first degree murder committed in the perpetration of an aggravated robbery. Accordingly, we reverse the judgments in counts two and three and dismiss the charges.

Turning to the sufficiency of the evidence to support the remaining conviction for second degree murder, we note that second degree murder is "strictly a 'result-of-conduct' offense." *State v. Page*, 81 S.W.3d 781, 787 (Tenn. Crim. App. 2002) (citing *State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000)). As such, the definition of "knowingly," as it pertains to second degree murder, requires "that a person acts with an awareness that his or her conduct is reasonably certain to cause the death of the alleged victim." *Page*, 81 S.W.3d at 788.

In this case, the defendant admitted that he went to the laundry room of the apartment complex to obtain marijuana from the victim and the victim's unknown companion. While waiting to receive the marijuana, the companion shot at the defendant.

The defendant, armed with a .45 caliber handgun, returned fire as the companion fled. The victim was shot twice by the defendant's gun. He died almost instantly. Within minutes of the shooting, the defendant arrived at Vanderbilt Hospital seeking treatment for two gunshot wounds received in the melee. Ballistics and blood evidence recovered at the scene corroborated the defendant's statement concerning the shooting. The defendant acted knowingly by firing his .45 caliber handgun into the laundry room in the direction of the victim in that he was reasonably certain to cause the death of the victim by engaging in such conduct. *See State v. George Blake Kelly*, No. 01C01-9610-CC-0048, slip op. at 13 (Tenn. Crim. App., Nashville, Oct. 13, 1998) (pointing out that to "establish second-degree murder, the [S]tate must prove that the defendant was 'aware that the conduct was reasonably certain' to cause death," focusing upon the probability of the result and distinguishing the implied-malice rule of the former second degree murder statute). Accordingly, we conclude that the evidence supports the defendant's conviction of second degree murder. In light of our reversal and dismissal of the first degree murder and especially aggravated robbery counts, however, we deem it appropriate to remand the judgment of second degree murder for resentencing.

*Conclusion*

Having concluded that the evidence is insufficient to support the defendant's convictions of first degree murder committed in the perpetration of an aggravated robbery and especially aggravated robbery, the judgments in counts two and three are reversed, and the charges are dismissed. Having further determined, however, the evidence sufficient to the support the defendant's conviction of second degree murder, the judgment in count one is affirmed. The case is remanded for resentencing in count one and for dismissal of the charges in counts two and three.

_____
JAMES CURWOOD WITT, JR., JUDGE